**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3825-12T4

DEPARTMENT OF CHILDREN AND
FAMILIES, DIVISION OF CHILD
PROTECTION AND PERMANENCY,

      Petitioner-Respondent,

  v.

E.D.-O.,

      Respondent-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 14, 2014**
>
> **APPELLATE DIVISION**

Telephonically argued December 18, 2013 —
Decided January 14, 2014

Before Judges Fisher, Espinosa and Koblitz.

On appeal from the Director, Division of
Child Protection and Permanency, Department
of Children and Families, Agency No. AHU 09-
0740.

Daniel N. Epstein argued the cause for
appellant (Epstein Arlen, LLC, attorneys;
Mr. Epstein, of counsel and on the brief;
Carol Matula, on the brief).

Ann Avram Huber, Deputy Attorney General,
argued the cause for respondent (John J.
Hoffman, Acting Attorney General, attorney;
Andrea M. Silkowitz, Assistant Attorney
General, of counsel; Ms. Huber, on the
brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider whether a nineteen-month-old child was abused or neglected when left unattended in a motor vehicle while her mother entered a nearby store. In affirming, we conclude the mother failed to exercise the minimum degree of care required by N.J.S.A. 9:6-8.21(c)(4)(b).

Appellant E.D.-O. (Eleanor, a fictitious name) acknowledges that late in the morning of May 6, 2009, she: parked her car approximately 150 feet from the front door of a Dollar Tree store in South Plainfield; left her sleeping nineteen-month-old child belted into her car seat in the vehicle; and kept the engine running and the doors locked with windows opened approximately one inch while she entered the store. Five to ten minutes later, Eleanor exited the store to find, by her car, police officers called by a mall security guard, who had observed the unattended child. Eleanor was arrested, charged with child endangerment and released on her own recognizance.[1]

The Division of Youth and Family Services, now known as the Division of Child Protection and Permanency (the Division), immediately investigated and a Division representative spoke with Eleanor the same afternoon. Eleanor was tearful and remorseful; she was described by her husband as a "good and

_____

[1] The record does not disclose the results of the criminal charges.

caring mother." All their children,[2] as the Division then learned, were appropriately dressed, current on their immunizations, and covered by health insurance. Two of the older three children[3] said their mother, who was not employed outside the home, had never left them alone. The home was well cared for and free of safety hazards. Consequently, the Division's concern was essentially limited to the incident in question, which was substantiated, thereby requiring Eleanor's inclusion in the child abuse registry pursuant to N.J.A.C. 9:6-8.11. A family safety plan was implemented.

Two weeks later, the Division filed a Title Nine action, seeking care and custody of all four children. On September 3, 2009, the Division agreed the family was in no further need of intervention, and the action was consensually dismissed.

Eleanor filed an unsuccessful administrative appeal and now appeals the Director's final agency decision, arguing she was entitled to an evidentiary hearing and claiming the Director's determination was legally insufficient.

---

[2]The child in question was the youngest of four, the others were born in 1999, 2002 and 2004.

[3]One child was too bashful to speak to the Division representative. The nineteen-month-old child was described as "non-verbal."

We find no error in the Director's rejection of Eleanor's request for an evidentiary hearing. Although controversies based on N.J.S.A. 9:6-8.21(c)(4)(b) have generally been referred to as "quite fact sensitive," N.J. Div. of Youth & Family Servs. v. S.N.W., 428 N.J. Super. 247, 253 (App. Div. 2012), the material facts we described at the outset were not disputed, and the Director properly applied the procedure outlined in N.J.A.C. 1:1-12.5(b), which tracks Rule 4:46-2(c)'s method for summarily resolving factually undisputed civil actions. See E.S. v. Div. of Med. Assistance Health Servs., 412 N.J. Super. 340, 350 (App. Div. 2010).

This appeal presents only a legal question: whether the material facts support a finding of abuse or neglect. That question is governed by N.J.S.A. 9:6-8.21(c)(4), which states that an "abused or neglected child" means a child under the age of eighteen years:

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof[.]

The Legislature provided no further clarity as to the reach of the phrase "minimum degree of care," but our Supreme Court

ascertained it means "grossly or wantonly negligent, but not necessarily intentional" conduct. G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). In that sense, a parent fails to exercise a minimum degree of care when "aware of the dangers inherent in a situation," the parent "fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181. The parent is held to what "an ordinary reasonable person would understand" in considering whether a situation "poses dangerous risks" and whether the parent acted "without regard for the potentially serious consequences." Id. at 179.

More recently, the Court reaffirmed that its "'cautionary act' language . . . is informed by" G.S.'s "grossly negligent or reckless standard," but further explained that "every failure to perform a cautionary act is not abuse or neglect"; that is, "[w]hen the failure to perform a cautionary act is merely negligent, it does not trigger" the statute. N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 306-07 (2011); see also S.N.W., supra, 428 N.J. Super. at 254. The focus on the parent's level of culpability in assessing whether a minimum degree of care has been exercised

> is in synchronicity with the Legislature's expressed purpose to safeguard children. Indeed, where a parent or guardian acts in a grossly negligent or reckless manner, that

> deviation from the standard of care may support an inference that the child is subject to future danger. To the contrary, where a parent is merely negligent there is no warrant to infer that the child will be at future risk.
>
> [T.B., supra, 207 N.J. at 307.]

This standard is best appreciated by specific examples contained in our case law, as the T.B. Court instructed in expressly referring to two of our prior decisions — N.J. Div. of Youth & Family Servs. v. A.R., 419 N.J. Super. 538 (App. Div. 2011) and N.J. Dep't of Youth & Family Servs. v. J.L., 410 N.J. Super. 159 (App. Div. 2009). The facts in T.B. further illustrate the statute's meaning.

In A.R., we found a parent to have been grossly negligent when he placed a ten-month-old child on a twin bed without rails next to a radiator and then closed the door behind him, concluding that "'an ordinary reasonable person' would understand the perilous situation in which the child was placed." 419 N.J. Super. at 545-46. A different outcome was warranted in J.L., where the mother of three- and five-year-old sons permitted them to "return home alone" while she remained in a nearby outdoor play area, because she had trained the boys to leave ajar the door, which was equipped with a child-proof cover, if they entered the home without her; on the occasion in question, the door accidentally closed behind the boys, thereby

locking them in and prompting one of the boys to call 9-1-1. 410 N.J. Super. at 161-62. Although the mother was "arguably inattentive or even negligent," we held the facts did not meet the statutory standard. Id. at 168. And, in T.B., the Court found the statutory standard was not violated when a mother, who resided with her four-year-old child in a separate apartment but in the same structure as her parents, assumed her parents were home and mistakenly left the sleeping child home alone. 207 N.J. at 296-97. The Court held that "[the mother's] failure to perform the cautionary act of calling upstairs to assure [the grand]mother's presence was clearly negligent[,] [but] [u]nder all of the circumstances known to her[4] . . ., it did not rise to the level of gross negligence or recklessness." Id. at 310.[5]

_____

[4]The record in T.B. reveals the mother's assumption that her mother and stepfather were home was not merely the product of supposition but based on the work schedules and routine patterns of all three adults. The details are fully explored in the Supreme Court's opinion and need not be repeated here. 207 N.J. at 296-98.

[5]The child in A.R. was severely burned, 419 N.J. Super. at 541, whereas the children in J.L. and T.B. were unharmed by their parents' neglect, although the potential for harm in the latter case was great because the four-year-old child woke and, not finding his mother home, crossed the street to a neighbor's home, T.B., supra, 207 N.J. at 297. The actual consequences did not in those cases, however, govern the result because the statute does not require that a court "wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999); see also N.J. Dep't of Children & Families v. A.L., 213

(continued)

These cases illustrate what <u>T.B.</u> referred to as a "continuum between actions that are grossly negligent and those that are merely negligent." <u>Id.</u> at 309. In applying that framework, we consider the analogous yet somewhat different circumstance of leaving a child alone in a motor vehicle — analogous because the circumstance involves a young child being left alone but different because the child was not only left alone in public but in a motor vehicle, a circumstance that compounded the risks.

Such events are apparently not as uncommon as might be hoped; the parties have cited no less than six fairly recent unreported decisions of this court dealing with young children left unattended in motor vehicles. Although there may be instances in which such an act may be fairly labeled "merely negligent," we need not describe at any length the parade of horribles that could have attended Eleanor's neglect in

(continued)
<u>N.J.</u> 1, 23 (2013); <u>N.J. Div. of Youth & Family Servs. v. V.T.</u>, 423 <u>N.J. Super.</u> 320, 330 (App. Div. 2011). Indeed, the abuse/neglect finding often arises because of a legitimate and reasonable inference — stemming from the act or omission in question — that "the child is subject to <u>future</u> danger." <u>T.B.</u>, <u>supra</u>, 207 <u>N.J.</u> at 307 (emphasis added). We need look no further than the statute itself to conclude that abuse or neglect has occurred when a child's "physical, mental, or emotional condition . . . is in imminent danger <u>of becoming impaired</u> as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care." <u>N.J.S.A.</u> 9:6-8.21(c)(4)(b) (emphasis added).

concluding, as did the Director, that the act of leaving a child alone in a motor vehicle with its engine running, to enter premises 150 feet away, is a reckless act enveloped by the standard contained in N.J.S.A. 9:6-8.21(c)(4)(b).[6]  As we have

---

[6]Many states have criminalized the same conduct, although without any uniformity in approach.  See Cal. Veh. Code § 15620(a)(2) (making punishable by fine the leaving of an unattended child under six years of age in a motor vehicle "[w]hen the vehicle's engine is running or the vehicle's keys are in the ignition, or both"); Fla. Stat. § 316.6135(1) (making it a misdemeanor to leave an unattended child under six years of age in a motor vehicle "in excess of 15 minutes" or "[f]or any period of time if the motor of the vehicle is running"); Haw. Rev. Stat. § 291C-121.5 (makes unlawful the leaving of an unattended child under nine years of age in a motor vehicle "for five minutes or longer"); 720 Ill. Comp. Stat. § 5/12C-5 (defining child endangerment as including knowingly leaving an unattended child six years of age or younger "in a motor vehicle for more than 10 minutes"); La. Rev. Stat. Ann. § 32:295.3 (making punishable by fine or imprisonment not to exceed six months leaving an unattended child under six years of age in a motor vehicle when the operator "is more than ten feet from the vehicle and unable to continuously observe the child"); Md. Code Ann., Fam. Law § 5-801 (making it a misdemeanor to leave an unattended child in a motor vehicle if the "motor vehicle is out of the sight of the person charged"); Mich. Comp. Laws § 750.135(a) (making it a misdemeanor if a child under six years of age is unharmed when left "unattended in a vehicle for a period of time that poses an unreasonable risk of harm or injury," and a felony if serious physical harm or death is caused); Nev. Rev. Stat. § 202.575 (making it a misdemeanor to leave an unattended child seven years old or younger in a motor vehicle if "[t]he conditions present a significant risk to the health and safety of the child" or "[t]he engine of the motor vehicle is running or the keys to the vehicle are in the ignition"); Okla. Stat. tit. 47, § 11-1119 (making it a misdemeanor to leave a child six years old or younger "unattended in a motor vehicle if the conditions, including, but not limited to, extreme weather, inadequate ventilation, or hazardous or malfunctioning components within the vehicle present a risk to the health or safety of the

(continued)

observed, the standard we must apply is whether "an ordinary reasonable person," G.S., supra, 157 N.J. at 179, would recognize the peril. We have no hesitation in answering that question in the affirmative. A parent invites substantial peril when leaving a child of such tender years alone in a motor vehicle that is out of the parent's sight, no matter how briefly. Eleanor recognized the danger when she felt it necessary to lock the vehicle's doors and lower both front

---

(continued)
unattended child"); 75 Pa. Con. Stat. § 3701.1 (making it a "summary offense" to leave a child under six years of age unattended when the motor vehicle "is out of the person's sight and under circumstances which endanger the health, safety or welfare of the child"); Tenn. Code Ann. § 55-10-803 (making it a misdemeanor to leave a child seven years old or younger "in a motor vehicle located on public property or while on . . . premises . . . generally frequented by the public at large without being supervised . . . if (1) The conditions present a risk to the child's health or safety; (2) The engine of the motor vehicle is running; or (3) The keys to the motor vehicle are located anywhere inside the passenger compartment of the vehicle"); Utah Code Ann. § 76-10-2202 (making it a misdemeanor for a person to "intentionally, recklessly, knowingly, or with criminal negligence" leave a child under nine years of age unattended in a motor vehicle if the vehicle is on public property or private property open to the public and "the conditions present a risk to the child of: (i) hyperthermia; (ii) hypothermia; or (iii) dehydration"); Wash. Rev. Code § 46.61.685 (making it a misdemeanor to leave a child under the age of sixteen unattended in a motor vehicle "with its motor running"). Two states impose criminal sanctions on day care or child care providers who leave children unattended in motor vehicles. See Ala. Code § 13A-11-290; Wis. Stat. § 948.53.

windows by an inch.[7]  In fact, she repeated in her appellate brief what she stated to the Division caseworker at the time: "she now knew that what she did was wrong."

---

[7]The dangers include but are not limited to the possibilities of car theft or kidnapping.  And the risk is by no means alleviated when the vehicle's engine is turned off; on a hot day, the temperature inside a motor vehicle can quickly spike to dangerously high levels, just as it may rapidly and precipitously dip on a cold night.  Not long ago a sister state's legislature made the following findings regarding unattended children in motor vehicles:

> [L]eaving a child unattended in a car can too often have tragic consequences, either because the child suffers from exposure to excessive heat, is injured when the car is stolen, or releases the emergency brake, inadvertently starts the car, or puts the car in gear. On average, thirty-six children per year across the country die in hot vehicles. About forty per cent of those deaths occur when caregivers forget that children are in the car.  About twenty per cent of children who die are intentionally left in vehicles by caregivers who do not know any better.
>
> [W]ith an outside temperature of approximately eighty-five degrees, the inside air temperature in a car will reach one hundred-thirty degrees or more. Under those conditions, a small child, whose body temperature increases three to five times faster than an adult's, can succumb to the heat in as short a time as fifteen minutes. External temperatures as low as sixty-six degrees can be fatal.  As a result, the five-minute trip to the bank that ends up taking a half-hour can be deadly.
>
> [2008 Haw. Sess. Laws, c. 170, § 1.]

A-3825-12T4

In drawing this conclusion, we do not mean to suggest there are no circumstances in which a child might be left unattended in a motor vehicle without running afoul of N.J.S.A. 9:6-8.21(c)(4)(b). For example, Eleanor greatly relies on an unreported decision involving a mother, whose husband was out of town and unavailable, leaving a sick and sleeping two-year-old in a locked and warm vehicle for approximately ten minutes to enter a store to purchase medicine for the child. In that case, we found the circumstances militated against finding the mother grossly negligent. Even were we to assume such conduct would fall short of the statutory requirements — a question we need not decide — the child here was not sick, Eleanor was only purchasing items for a party, and other adults were available to watch the child at home while Eleanor ran her errand. There being an absence of any extenuating circumstances, we conclude the Director reasonably found Eleanor's conduct was grossly negligent.[8]

---

[8]Eleanor strenuously argues the type of neighborhood — she claims the Middlesex Mall in South Plainfield, where this incident occurred, is "upscale" — is highly relevant in ascertaining the degree of her negligence. In assuming only for present purposes the accuracy of Eleanor's description of the Middlesex Mall, we disagree with the point she urges. Although it may be fair to conclude that leaving a child unattended in a high crime area would constitute a risky undertaking, the risk is not substantially reduced when the conduct occurs in less crime-ridden locales. Even the most upscale of neighborhoods and
(continued)

A-3825-12T4

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
shopping centers are troubled by crime. Moreover, as we have endeavored to explain, the risk to the child is not limited to exposure to criminality; the health risks of leaving a young child in an unattended motor vehicle no doubt produce more deaths or greater injuries than those caused by criminals.

A-3825-12T4