**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2605-12T4

NEW JERSEY DEPARTMENT OF
CHILDREN AND FAMILIES,

    Petitioner-Respondent,

v.

R.R.,

    Respondent-Appellant.

_____

<table>
<tr><td>APPROVED FOR PUBLICATION</td></tr>
<tr><td>June 9, 2014</td></tr>
<tr><td>APPELLATE DIVISION</td></tr>
</table>

Submitted June 3, 2014 — Decided June 9, 2014

Before Judges Fisher, Koblitz and O'Connor.

On appeal from the New Jersey Department of Children and Families, Docket No. AHU 11-1411.

Mellk O'Neill, attorneys for appellant (Arnold M. Mellk, of counsel; Gidian R. Mellk and Edward A. Cridge, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jennifer Hoff, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

O'CONNOR, J.S.C., (temporarily assigned).

On July 12, 2011, R.R., a school bus driver for the West Windsor-Plainsboro Board of Education, failed to inspect the bus at the conclusion of her route to determine if any children were still on board.  When R.R. exited the bus for the day, she left behind five-year-old C.S., who was alone for almost an hour before he was discovered.  The Institutional Abuse Investigation Unit (IAIU) of the Department of Children and Families (DCF) substantiated that R.R. committed an act of neglect in violation of N.J.S.A. 9:6-8.21(c)(4)(b).  R.R. appealed the IAIU's finding, which was ultimately affirmed by the DCF's Assistant Commissioner of the Office of Performance Management and Accountability (Commissioner).  We affirm.

I

Following the IAIU finding that R.R. committed an act of neglect, the Criminal History Review Unit of the Department of Education (Department) suspended R.R.'s school bus "S" endorsement on her driver's license for six months.  R.R. appealed both the IAIU finding of neglect and the Department's decision to suspend the "S" endorsement on her driver's license to the Office of Administrative Law.

The Administrative Law Judge (ALJ) who heard the appeal of the decision to suspend the "S" endorsement found the following facts.  The route R.R. took on July 12, 2011 was not her usual

one. She had, however, worked with the bus aide assigned to the route in the past; in fact R.R. had previously complained to a supervisor that the aide was inattentive, frequently making cellular telephone calls and sending text messages while children were on the bus. On the day of the incident, R.R. noticed the aide sending text messages while the children were being transported, and that she sat in the front instead of the middle or back of the bus, where aides are required to sit to better observe the children.

When R.R. reached C.S.'s home, she stopped the bus and honked the horn. When an adult did not emerge, the aide told R.R. that C.S. had not taken the bus that day. R.R. pulled away and, after completing the route, returned to the bus parking lot and dropped the aide off at her car. Before the aide got off the bus, she reported that there were no children remaining. Although R.R. also had an obligation to visually inspect the bus at the end of a route to see if any children remained on board, see N.J.S.A. 18A:39-28, she did not do so.

Within an hour of R.R. exiting the bus for the day, C.S.'s mother contacted the school and reported that her son had not arrived home. A staff person checked the bus and discovered C.S. asleep in his seat, still buckled-in by a seat belt. The child had been alone for a total of fifty-five minutes. R.R.

admitted she did not check the vehicle before getting off, explaining she had relied on the aide's representation that no children remained on the bus after they reached the parking lot.

The ALJ affirmed the Department's decision to suspend the "S" endorsement on R.R.'s license for six months, observing that N.J.S.A. 18A:39-28 requires a school bus driver to visually inspect the bus at the end of a transportation route to determine if any pupils are still on board. The ALJ also noted N.J.S.A. 18A:39-29 mandates a six month suspension of a school bus driver's endorsement if a driver has left a pupil on a school bus at the end of the driver's route. The ALJ concluded that, apart from the fact R.R. had a statutory obligation to make her own visual inspection of the bus at the end of her route, her reliance on the aide's report that there were no children left on board was unreasonable, given R.R.'s knowledge the aide was inattentive both in the past and on the day of the incident.

The ALJ filed her Initial Decision with the Acting Commissioner of the Department, who adopted the court's decision. R.R. did not appeal that decision.

Thereafter, another Administrative Law Judge heard the appeal of the IAIU finding that R.R. had committed an act of neglect under N.J.S.A. 9.6-8.21(c)(4)(b). The parties

stipulated to the factual findings made by the first ALJ. The parties also stipulated the highest temperature on the day of the incident was ninety-five degrees. As no material facts were in dispute, both R.R. and the DCF filed motions for summary judgment. The second ALJ granted R.R.'s and denied the DCF's motion for summary judgment, finding R.R. had not abused or neglected C.S. as defined by N.J.S.A. 9.6-8.21(c)(4)(b), which, he observed, requires a finding of "grossly or wantonly negligent" and not merely negligent conduct.

Specifically, the second ALJ concluded it was reasonable for R.R. to assume C.S. was not on the bus when no one emerged from his home after she honked the horn, a conclusion that was then reinforced when the aide commented the child had not taken the bus that day. While R.R. harbored doubts about the aide's attentiveness and reliability, the second ALJ opined it was nonetheless reasonable for her to conclude the aide's observations were accurate when in fact no adult met the child at the stop.

The second ALJ dismissed the substantiation of neglect, and filed his Initial Decision with the Commissioner. The Commissioner rejected the second ALJ's recommendation and issued a Final Decision affirming the substantiation of neglect, and

ordered that R.R.'s name be placed on the Child Abuse Registry, pursuant to N.J.S.A. 9:6-8.11.

The Commissioner found R.R. had engaged in wilful and wanton conduct by failing to inspect the bus personally at the end of the route, relying instead upon an untrustworthy, unreliable aide's representation no children remained on board. She further found R.R.'s assumption the child was not on the bus because no one greeted him at his stop flawed, as R.R. was unfamiliar with the route and unaware whether it was customary for an adult to meet C.S. when he got off the bus. The Commissioner also noted R.R. should have considered that the child's caretaker may have been briefly detained inside of the home, rather than assume the child was not on the bus.

II

Under N.J.S.A. 9:6-8.21(c)(4)(b), an "abused or neglected child" means an individual under the age of eighteen years

> whose physical, mental, or emotional
> condition has been impaired or is in
> imminent danger of becoming impaired as the
> result of the failure of his parent or
> guardian . . . to exercise a minimum degree
> of care . . . (b) in providing the child
> with proper supervision or guardianship, by
> unreasonably inflicting or allowing to be
> inflicted harm, or substantial risk
> thereof[.]

Our Supreme Court has defined "minimum degree of care" as "grossly or wantonly negligent" conduct. G.S. v. Dep't of Human

6

Servs., 157 N.J. 161, 178 (1999).  A parent or guardian "fails to exercise a minimum degree of care when [the guardian] is aware of the dangers inherent in a situation," but "fails adequately to supervise the child or recklessly creates a risk of serious injury to that child."  Id. at 181.  "Whether a parent or guardian has failed to exercise a minimum degree of care is to be analyzed in light of the dangers and risks associated with the situation."  Id. at 181-82.  A parent or guardian is held to what "an ordinary reasonable person would understand" in considering whether a situation "poses dangerous risks" and whether the guardian acted "without regard for the potentially serious consequences."  Id. at 179.

Actual harm need not befall a child for there to be a violation of N.J.S.A. 9:6-8.21(c)(4)(b).  See In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999); see also N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 23 (2013); N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 330 (App. Div. 2011).  Abuse or neglect can occur when a child's "physical, mental, or emotional condition . . . is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care."  N.J.S.A. 9:6-8.21(c)(4)(b).  "[An] abuse/neglect finding often arises because of a legitimate and reasonable inference —

stemming from the act or omission in question — that 'the child is subject to future danger.'" Dep't of Children & Families v. E.D.-O., 434 N.J. Super. 154, 159 n.5 (App. Div. 2014) (quoting N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 307 (2011)). "[W]here a parent or guardian acts in a grossly negligent or reckless manner, that deviation from the standard of care may support an inference that the child is subject to future danger." T.B., supra, 207 N.J. at 307.

We recently determined that a parent who left her nineteen-month-old child unattended in a vehicle while the parent went into a store 150 feet away failed to exercise the minimum degree of care required by N.J.S.A. 9:6-8.21(c)(4)(b). E.D.-O., supra, 434 N.J. Super. at 160. Of concern was not only that the child had been left alone but, "compounding the risks," had been left alone in public and in a motor vehicle. Id. at 159-60. We concluded a young child is exposed to "substantial peril" when left alone in a vehicle out of a parent's sight, "no matter how briefly." Id. at 161.

While the child in E.D.-O was younger than C.S. and the engine was running, we do not discern any appreciable difference between the extent of neglect that occurred in E.D.-O and here. In both instances, a young, helpless child was left alone in a vehicle parked in a lot to which the public had access. Here,

there was the added element the temperature reached ninety-five degrees on the day of the incident.  Although fortuitously R.R. had left the windows open on the bus before she left, given the high temperatures the bus was very likely uncomfortably hot.

There is also the component that, in violation of a statutory duty, R.R. had not even bothered to investigate whether a child was still on the bus before she left for the day.  Her reliance upon the aide does not salvage her poor judgment in light of R.R.'s knowledge the aide had been derelict in her duties in the past, including on the day of the incident, as evidenced by the aide's failure to properly position herself on the bus where she could observe the students, and by her preoccupation with sending text messages.

Appellate review of a final decision of a State administrative agency is limited; we are obligated to "'defer to an agency's expertise and superior knowledge of a particular field.'"  T.B., supra, 207 N.J. at 301-02 (citing Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).  "Thus, we are bound to uphold an agency's decision 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'"  Ibid. (citing In re Herrmann, 192 N.J. 19, 27-28 (2007)).  We are satisfied the Commissioner's conclusion R.R. violated N.J.S.A. 9:6-

8.21(c)(4)(b) was not arbitrary, capricious, or unreasonable; in fact, her decision is amply supported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2605-12T4