# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2407-22

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.A.,

     Defendant-Appellant,

and

A.A.,

     Defendant.

_____

IN THE MATTER OF
A.M.A., a minor.

_____

Argued September 12, 2024 – Decided September 20, 2024

Before Judges Mawla, Natali and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FN-12-0127-21.

T. Gary Mitchell, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; T. Gary Mitchell, on the briefs).

Lakshmi R. Barot, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Lakshmi R. Barot, on the brief).

Noel C. Devlin, Assistant Deputy Public Defender, argued the cause for minor (Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, of counsel and on the brief).

PER CURIAM

Defendant J.A. (Jane)[1] appeals from a finding in this Title Nine action that she abused or neglected her one-month-old child, A.M.A. (Annie), by leaving her unattended and without supervision contrary to a court-ordered safety protection plan.[2] The Law Guardian joins with the Division and requests we

---

[1] We use initials and pseudonyms to identify the parties for ease of reference and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

[2] Annie's biological father, A.A., has not participated in this appeal.

A-2407-22

affirm the court's finding. Because we conclude there was sufficient credible evidence in the record supporting the judge's decision, we affirm.

I.

The Division of Child Protection and Permanency (the Division) became involved with the family in November 2020 when Jane was five-months pregnant with Annie. According to the Division's records, it received a referral from the Carteret Police who responded to a domestic violence dispute between Jane and Annie's father during which Jane allegedly "admitted to drinking too much and being intoxicated."

Subsequently, the hospital where Jane gave birth to Annie also made a referral to the Division because Jane tested positive for cocaine, cannabinoids, and oxycodone. After an investigation, the Division filed a Verified Complaint for Care and Supervision and to Appoint a Law Guardian for Annie pursuant to N.J.S.A. 30:4C-11, alleging Annie tested positive for oxycodone and cocaine at birth, and there was domestic violence between the parents. The Division also contended, however, despite the positive drug test, Annie did not suffer any other discernible health problems.

On April 23, 2021, the court entered an order to show cause granting the Division care and supervision of Annie, with liberal visitation for both parents

3

supervised by the Division or a Division-approved supervisor. Both parents ultimately agreed to abide by a safety protection plan (SPP) which required all their contact with Annie be supervised.[3] Jane's mother, M.R. (Marie), with whom she and Annie lived, and Jane's godmother, E.A. (Erica), were designated approved supervisors. According to the Division, after entry of the SPP, Jane tested positive for fentanyl and admitted using cocaine. Her substance abuse treatment program thereafter recommended she receive "a higher level of care," such as a residential program.

On April 29, 2021, the Division filed an amended complaint pursuant to N.J.S.A. 30:4C-12 and 9:6-8.21, as it had removed Annie on an emergent basis two days earlier because, allegedly, (1) Marie had violated the SPP and April 23 order by leaving Jane alone with Annie unsupervised, and (2) during that unsupervised time, Jane had left Annie unattended. The events of April 27, 2021, leading to the removal, were described in detail by the Division's sole witness, caseworker Angela Fitzgerald, at the two-day fact-finding hearing, which formed the basis for the court's Title Nine finding against Jane.

---

[3] Although a written copy of the SPP does not appear in the record, the SPP was court ordered on April 23, 2021. At that hearing, Jane's counsel explicitly acknowledged Jane "underst[ood] supervision right now will be necessary . . . ."

Fitzgerald testified she visited the family home in response to a call reporting Jane was alone with Annie contrary to the SPP on April 27th. She stated Annie, Jane, Marie, Erica, and Jane's brother, J.K.A. (Juan), were present in the home when she arrived. She added that although Juan had initially been asked by the Division to supervise Jane and Annie, he declined to do so and thus was not an approved supervisor.

Fitzgerald testified both Jane and Marie initially denied leaving Annie unsupervised. According to Fitzgerald, Jane told her Marie "left early in the morning to go to New York City" for a work emergency and took Annie with her, while Jane stayed home with Juan all day. She testified Jane and Marie estimated Marie and Annie left at approximately 10:00 a.m. and returned around 7:30 p.m.[4]

When asked about the reason Jane needed to be supervised, consistent with prior representations made by her counsel, Fitzgerald testified she was

---

[4] The only challenge to Fitzgerald's testimony defendant raises before us concerns her alleged "incorrectly recalled hearsay . . . ." Specifically, defendant states Fitzgerald initially "testified [Juan] said he 'assumed' that [Jane] 'was intoxicated by her actions,' but on cross-examination . . . Fitzgerald conceded . . . that [Juan] 'was not able to say if his sister was intoxicated' . . . as Fitzgerald initially incorrectly testified." We find defendant's contention unpersuasive and remain satisfied the non-hearsay portions of Fitzgerald's testimony, in combination with Jane's clearly admissible statements to Fitzgerald, see N.J.R.E. 803(b)(1), fully support the court's Title Nine finding.

A-2407-22

informed Jane "had a substance abuse issue," and Jane told her "she had just started her program for substance abuse treatment." Fitzgerald stated she asked Jane when she last used substances, and Jane told her she had used a non-prescribed Percocet a week ago, and drank a Heineken beer that day around 3:00 p.m., contrary to the requirements of her substance abuse program.

Fitzgerald testified she then spoke to Juan separately who told her a completely different version of events. Specifically, Juan informed her Annie had been left with Jane unsupervised. Fitzgerald explained Juan further stated he heard Annie crying and discovered her "alone in the bassinet in the basement of the home." Because Juan did not know what to do, Fitzgerald stated he called his older brother, E.A. (Eric), who then called the Division. She added Juan also stated he saw Jane "drinking out of a glass" and "assumed that she was intoxicated by her actions."

Fitzgerald testified she then confronted Marie and Jane about the inconsistencies, and both admitted Annie was left with Jane unsupervised. According to Fitzgerald, Jane and Marie confirmed Jane was alone with Annie from approximately 8:30 or 9:00 a.m. until approximately 7:30 p.m. Fitzgerald also stated Juan and Eric both reported to her that Jane had been unsupervised

6

with Annie "several times before." She added Jane denied she ever left Annie unattended prior to the April 27th incident.

Fitzgerald also testified Jane admitted she had gone to 7-Eleven to get a drink, but had not told Juan that she was leaving. According to Fitzgerald, Juan estimated Jane was gone for approximately fifteen to thirty minutes. The Division subsequently removed Annie from Jane's care and placed her with Eric.

After considering Fitzgerald's testimony and the documentary evidence, which included a screening summary dated April 27, 2021; Fitzgerald's investigation summary; and the court's April 23 order to show cause, the court concluded Jane abused and neglected Annie under N.J.S.A. 9:6-8.21(c)(4)(b) by leaving her unattended and unsupervised contrary to the SPP. In a comprehensive oral decision, the court recounted the relevant procedural history and specifically noted it granted the Division care and supervision and required Jane be supervised with Annie based on Jane's "history of substance abuse" and Annie "being born positive for oxycodone and cocaine," as well as instances of domestic violence in the family.

The court found Fitzgerald credible, noting "[s]he didn't really refer to her notes all that often," and was "very forthright" and "clear in her testimony." It

explained Fitzgerald's "demeanor was calm and appropriate" and "[h]er testimony was consistent with her report."

Crediting Fitzgerald's testimony, the court found: (1) she went to Jane's home in response to a call reporting Jane was alone with Annie in violation of the SPP; (2) Marie and Jane initially told her Marie had gone to work with Annie at approximately 10:00 a.m. and denied that Jane was alone with Annie; (3) Juan contradicted both Jane's and Marie's initial statements and instead informed Fitzgerald that Jane "was alone all day with [Annie] with no supervision"; (4) Juan found Annie "alone in the bassinet" when he heard her crying; and (5) Jane had been alone with Annie "a number of times," according to Juan.

The court further found, based on Fitzgerald's testimony, that Marie ultimately admitted she left Annie with Jane, and Jane confirmed she was alone with Annie from "approximately 10 in the morning until 7:30 in the afternoon." Further, the court determined Jane "admitted that she had left the baby alone to go to 7-[Eleven]," and had not told Juan she was leaving; the court also noted Jane denied being alone with Annie previously. Finally, the court believed Fitzgerald and determined Jane admitted she had used unprescribed Percocet the week before and drank a beer the day of the incident.

8

The court next addressed the applicable legal principles and explained "the purpose of Title [Nine] is to protect children and the paramount concern under this statute [is] the safety of children." Despite the absence of actual harm to Annie, the court nevertheless explained, a finding of abuse or neglect "can be based on proof of imminent danger and substantial risk of harm." Relying upon our decision in Division of Child Protection & Permanency v. E.D.-O., 434 N.J. Super. 154 (App. Div. 2014), rev'd on other grounds, 223 N.J. 166, 170-71 (2015), a case involving a parent leaving a young child in a car seat in a locked car, the court stated "a parent invites substantial peril when leaving a child of such tender years out of sight, no matter how briefly."

The court reasoned Annie's being left unattended was "really only part of the allegation here," which also involved "the aspect of violation of the court order which required [Jane] to be supervised." The court found there was "information regarding proof of use of drugs that [it] th[ought] [we]re relevant to a risk of harm," specifically Jane's "history of substance abuse concerns," admission to "us[ing] a street Percocet the prior week," and her admission to drinking a beer while "alone unsupervised with the child all day." It noted it required supervision because Jane was "struggling with addiction," and although

she was in treatment she was "being recommended for [a] higher level of care because . . . she used even the week before."

The court stressed Jane knew she was required to be supervised and the reasons for supervision, but nonetheless "stay[ed] with the child all day with no supervisor . . . approved by the Division or the court." It noted she could have "called somebody else" or "gone with her mother," but chose not to. In addition, it found Jane, "with all of this information," still chose to leave Annie alone.

Further, it found Jane left one-month-old Annie "alone in the home to go to 7-[Eleven]," and it was "[n]ot certain why at that moment [Jane] had to go to 7-[Eleven]" as "there was no emergency" or "need to go at that point in time," and it was not certain if she even actually went to 7-[Eleven]. The court found it "more concerning" that Jane "never told [Juan], who was in the home somewhere, that she was going to 7-[Eleven]."

Based on Jane's actions on April 27, 2021, as informed by the circumstances surrounding the entry of the SPP, the court found Jane "failed to exercise a minimum degree of care" which "placed this child at substantial risk of harm." It explained its conclusion was based on "not just the leaving the child alone" but "that [Jane] was unsupervised all day." The court reasoned Jane "didn't think somebody was watching the child, like [in Department of Children

& Families v. T.B., 207 N.J. 294 (2011) and] . . . didn't have a safety plan set up with the child" but "left the child alone knowing no one . . . knew the child was there, no one was watching the child, and for no good reason."  The court memorialized its decision in an October 28, 2021 written order.

On March 2, 2023, the court entered an order terminating the litigation because the Division filed a complaint for termination of parental rights.  This appeal followed in which Jane presents the following contentions for our consideration:

> I. A JUDGMENT UNDER N.J.S.A. 9:6-8.21[(c)](4)(b) IS IMPROPER AGAINST A MOTHER FOR STAYING HOME WITH A BABY WHO SHE KEPT SAFE, OR FOR BRIEFLY HAVING LEFT HER BABY AT HOME KNOWING ANOTHER ADULT WAS PRESENT, WHERE THE JUDGMENT RESTED ON A JUDGE'S CATEGORICAL VIEW THAT AS A "DRUG USER" THE MOTHER WAS A DANGER TO THE CHILD DESPITE NO EVIDENCE SHE EVER WAS IMPAIRED OR USED DRUGS WHILE WITH THE BABY.
>
> a. A Mother Who Kept Her Baby Safe Despite Violating a Safety Protection Plan Engaged In No Conduct That Can Sustain A Neglect or Abuse Judgment Because The Evidence Did Not Show Her Being Home With the Baby Provided Less Than The Minimum Degree of Care, Created Imminent Danger And A Substantial Risk To Violate N.J.S.A. 9:6-8.21[(c)](4)(b).

11

> b. A Mother Who Briefly Left Her Baby Asleep
>    In a Bassinette At Home When She Knew Her
>    Adult Brother Was Home Did Not Violate The
>    Minimum Degree of Care Required By
>    N.J.S.A. 9:6-8.21[(c)](4)(b), Or Create
>    Imminent Danger of a Substantial Risk.

We are unpersuaded by any of these arguments and affirm substantially for the reasons expressed in the judge's cogent oral decision. We add the following remarks.

## II.

Our standard of review of the Family Part's fact-finding determination is limited. N.J. Div. of Youth & Fam. Servs. v. R.D., 207 N.J. 88, 112 (2011). On appeal from orders issued in Title Nine cases, we accord considerable deference to the trial court's credibility determinations and findings of fact, as long as those findings are supported by "competent, material and relevant evidence." N.J.S.A. 9:6-8.46(b); see also N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369-70 (2017).

We intervene only "if the trial court's conclusions are 'clearly mistaken or wide of the mark' . . . ." N.J. Div. of Youth & Fam. Servs. v. L.L., 201 N.J. 210, 227 (2010) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We also owe no deference to the trial court's legal conclusions, which

12

we review de novo.  N.J. Div. of Child Prot. & Permanency v. B.H., 460 N.J. Super. 212, 218 (App. Div. 2019) (citing N.J. Div. of Child Prot. & Permanency v. K.G., 445 N.J. Super. 324, 342 (App. Div. 2016)).

Title Nine cases are fact-sensitive, and the court should "base its findings on the totality of circumstances . . . ." N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).  The Division has the burden in proceedings under Title Nine to prove "by a preponderance of competent, material, and relevant evidence that a parent abused or neglected a child." N.J. Div. of Child Prot. & Permanency v. B.P., 257 N.J. 361, 374 (2024).

Pertinent to this appeal, an "abused or neglected child" under Title Nine means:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of [their] parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

A court need not wait until a child is actually harmed or neglected before it can act in the welfare of that minor.  N.J. Div. of Youth & Fam. Servs. v. V.M., 408 N.J. Super. 222, 235 (App. Div. 2009).  "In the absence of actual

13

harm, a finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm." N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 23 (2013) (citing N.J.S.A. 9:6-8.21(c)(4)(b)). "Any allegation of child neglect in which the conduct of the parent or caretaker does not cause actual harm is fact-sensitive and must be resolved on a case-by-case basis." E.D.-O., 223 N.J. at 192.

"'[M]inimum degree of care' refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 178 (1999). "[A] guardian [or parent] fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." A.B., 231 N.J. at 369 (citing G.S., 157 N.J. at 181). In essence, a parent is held to what "an ordinary reasonable person would understand" when considering whether the situation posed a risk and whether the parent nevertheless acted "without regard for the potentially serious consequences . . . ." G.S., 157 N.J. at 179.

Jane argues the court erred in concluding she abused or neglected Annie. She maintains there was "no evidence of any adverse impact on" Annie from her substance use or unsupervised care. Jane contends she "took proper care of her

14

baby while unsupervised," and "left home only very briefly knowing her twin brother was home," noting the Division gave her no instruction for what to do if her supervisors were unavailable. She asserts the evidence before the court showed her conduct did not reach the level of recklessness or gross negligence but rather was a "mistake" stemming from "inexperience or confusion about what to do under a four[-]day old [SPP]."

Relying upon New Jersey Division of Child Protection & Permanency v. Y.N., 220 N.J. 165 (2014), Jane argues the court failed to consider each of the required elements, including whether she "acted unreasonably or with a minimum degree of care," whether imminent danger was created, and whether there was a substantial risk of harm to the child. Jane maintains the court erred by "consider[ing] drug use in a categorical manner as if Title [Nine] created strict liability" despite no evidence that her drug use amounted to gross negligence. She contends the court was "driven by hostility to a mother's drug use, forsaking proof of drug use for a claim that the mother violated a [SPP] to measure the minimum degree of care owed [to] a child."

Further, Jane maintains, even assuming she acted negligently, there was no evidence she placed Annie in imminent danger. She argues "[t]he only possible risk with which [the Division] was concerned was from [her] alleged

drug use history," but there was no evidence of her impairment that day except her admission of drinking one beer, and the court may not "fill in missing information." She further maintains, the court "disregard[ed] the lack of evidence on the magnitude, duration or impact of [Jane]'s drug use." On this point, Jane relies upon New Jersey Department of Children & Families v. A.L., 213 N.J. 1 (2013), in which the trial court erred by relying upon statements that a child's meconium tested positive for cocaine metabolites without evidence supporting injury to the child.

Jane also stresses Annie was not left alone, because Juan was present and within earshot of the infant, which Jane knew. She argues there was no evidence she "did not return quickly," and "poor planning is not gross negligence." Jane relies upon T.B., noting in that case the Court reversed a finding of abuse or neglect based upon a mother leaving her child unattended for a two-hour dinner date and held a failure to "perform a cautionary act" which is "merely negligent" does not result in a finding of abuse or neglect.

Jane notes there were "no dangers [to Annie] from objects, the environment, or from [Jane]'s brother who was home with the baby." Jane argues "the risks from [her] having left the home briefly were speculative, ephemeral, even illusory." She relies upon New Jersey Division of Youth &

Family Services v. N.D., 435 N.J. Super. 488 (App. Div. 2014), for the proposition that substantial risk may not rest upon speculation.

As noted, we disagree with all of Jane's arguments and are convinced the court did not err in concluding Jane abused or neglected Annie by caring for her without an approved supervisor, and by leaving her unattended. As the court recognized, and contrary to Jane's contentions before us, it was not solely Jane's history of substance abuse, or her caring for Annie unsupervised or leaving her unattended, in isolation, which led the court to conclude Jane abused or neglected Annie; rather, the totality of these circumstances clearly placed Annie at imminent risk of harm.[5]

It was not disputed that Jane struggled with addiction, which led to the Division's involvement and the entry of the SPP. Although she was in treatment,

---

[5] On this point, the cases Jane relies upon are clearly distinguishable as the court did not base its Title Nine finding solely on Jane's substance use issues. See Y.N., 220 N.J. at 186 (holding mother's participation in "bona fide methadone maintenance program" while pregnant resulting in newborn's withdrawal symptoms was not a sufficient basis to find abuse or neglect "standing alone"); A.L., 213 N.J. at 27-28 (concluding newborn's meconium test which was positive for cocaine metabolite "without more, does not establish proof of imminent danger or substantial risk of harm"); N.D., 435 N.J. Super. at 497 (finding the record lacked evidence to infer causal connection between mother's cocaine use while pregnant and effects on newborn's health without expert testimony). As detailed, infra, there was sufficient support in the record to support the court's finding that Jane's actions placed Annie in imminent danger or substantial risk of harm.

her treatment provider recommended inpatient care, and Jane further confirmed she had used an unprescribed Percocet as recently as a week prior to the events in question, and that she drank a beer while caring for Annie unsupervised, despite her substance abuse treatment requiring her to abstain from all such substances.

While there was no competent proofs Jane was intoxicated on April 27, 2021, Annie's young age—only one month old—made her dependent upon her caretaker to assure her safety, and vulnerable to any misstep Jane might make, which was the reason a SPP was required. On this point, Jane did not dispute Annie was in her care without an approved supervisor for at least eight hours and only four days after the court ordered she be supervised with the child at all times. At a minimum, Jane's knowledge of the SPP evidenced her awareness of the risk posed to Annie by unsupervised contact. Her decision to remain with Annie unsupervised while Marie worked demonstrated a conscious disregard of that risk. As the court correctly recognized, Jane could have contacted the other Division-approved supervisor, gone with Marie to New York, or, if all else failed, contacted the Division.[6]

---

[6] We note that the Division also determined Marie neglected Annie by inadequately supervising her related to the April 27, 2021 incident. See Dep't

Additionally, there is nothing in the record that would support the conclusion Jane's decision to leave Annie to go to 7-Eleven was based on emergent circumstances. According to Fitzgerald, Jane stated she went to 7-Eleven to get a drink, which, absent evidence that there was no water available in the home, is not an emergency warranting leaving an infant unattended. Although we recognize "every failure to perform a cautionary act is not abuse or neglect," T.B., 207 N.J. at 306, as noted, it was not Jane's failure to alert Juan of her departure, standing alone, but the combination of all the circumstances which support the court's Title Nine finding.

Those circumstances are clearly distinguishable from those in T.B. which led the Court to find leaving a child unattended did not amount to abuse or neglect. In that case, the mother believed the child's grandmother would watch him because she regularly did so. Id. at 297-98. Here, although Juan was home, he had expressly declined to be a supervisor for Jane and Annie and there was

_____

of Child. & Fams. v. M.R., No. A-3089-22 (App. Div. June 18, 2024). We affirmed that administrative finding and concluded "the credible proofs in the record establish that [Marie] engaged in gross and wantonly negligent conduct by placing [Annie], then only one month old, in imminent danger of impairment through knowingly allowing Jane to watch [Annie] without a [Division]-authorized supervisor pursuant to the SPP." Id. (slip op. at 12-13). It found Marie's "conduct created the foreseeable risk of imminent danger to [Annie] as Jane left the infant unattended, as evidenced by [Juan] finding [Annie] alone and crying." Id. (slip op. at 13).

19

no pattern of Juan caring for Annie. In fact, Juan only heard Annie's cries of distress when he answered the door to a Division caseworker performing a check-in visit.

And, as noted, Jane failed to even inform Juan she was leaving or ask him to watch Annie who at one month old, and unlike the four-year-old child in T.B., was unable to walk or talk. Indeed, Juan had to call Eric for assistance with Annie because he did not know how to care for an infant. Finally, in T.B. the Division had not previously been involved with the family, id. at 298, unlike here where the Division had been working with Jane since her pregnancy and had entered the SPP requiring Jane be supervised less than a week before she left Annie unattended.

Applying our limited scope of review and well-established legal standards, we are satisfied there was competent, credible evidence in the record to support the judge's finding that Jane abused or neglected Annie within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b) by caring for her unsupervised in violation of the SPP and leaving her unattended. While Annie fortunately did not suffer actual harm on April 27, 2021, the court was not required to "wait to act until [she] [wa]s irreparably impaired by parental inattention or neglect."

A-2407-22

E.D.-O., 223 N.J. at 178 (quoting In re Guardianship of DMH, 161 N.J. 365, 383 (1999)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2407-22