**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4594-12T4

DEPARTMENT OF CHILDREN AND
FAMILIES, DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Petitioner-Respondent,

v.

G.R.,

    Respondent-Appellant.

_____

<table>
<tr><td>

**APPROVED FOR PUBLICATION**

**May 2, 2014**

**APPELLATE DIVISION**

</td></tr>
</table>

Argued April 9, 2014 — Decided May 2, 2014

Before Judges Fuentes, Fasciale and Haas.

On appeal from the Department of Children and Families, Division of Child Protection and Permanency, Docket No. AHU-08-0191.

Kevin T. Conway argued the cause for appellant.

Lori J. DeCarlo, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Ms. DeCarlo, on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

G.R. appeals from an April 12, 2013 final agency decision by the Director (the "Director") of the Division of Child

Protection and Permanency (the "Division") summarily concluding that G.R. neglected her two-year-old son by failing to exercise a minimum degree of care as required by N.J.S.A. 9:6-8.21c(4)(b). The Division took approximately five years to resolve G.R.'s administrative appeal and place her name on the child abuse registry (the "Registry"). Although G.R. timely disputed the Division's initial substantiation of neglect, she lived with the uncertainty of the outcome of her challenge during the entire five years. This substantial delay was caused by agency inaction and the inadvertent misplacement of G.R.'s file by a Deputy Attorney General (DAG). We reverse without prejudice, remand, and direct the Office of Administrative Law (OAL) to conduct a hearing to resolve disputed material issues of fact and to address G.R.'s contention that the case should be dismissed as a matter of fundamental fairness.

I.

G.R. acknowledges that on the afternoon of December 6, 2007, she left her son unattended in her minivan in a mall parking lot while shopping in a Target store (hereinafter referred to as "the incident"). The parties dispute where G.R. parked, what path she took to enter the store, and the length of time she was away from her vehicle. G.R. contends that she parked twenty feet from a side entrance to the store, left her

son in the minivan appropriately dressed and sleeping, ensured that he was properly secured in his car seat, turned off the engine, locked the vehicle, and returned as soon as five minutes later. Although the record is unclear about what G.R. planned to buy from Target, a Division caseworker later noted that G.R. "grabbed the few things that [G.R.] needed." As she returned to the minivan, a police officer issued her a summons for endangering the welfare of her child.[1]

Six days later, on December 12, 2007, the police referred the matter to the Division. At midnight that night, a caseworker arrived at G.R.'s home and verified with G.R. that the incident occurred. The caseworker observed that the house appeared to be clean and organized, and that the two-year-old and G.R.'s two other children (then eight and ten years old) were healthy, clean, and sleeping in their bedrooms. The caseworker left G.R.'s home satisfied that there were "[n]o signs of abuse or neglect."

On December 17, 2007, the caseworker returned to the home and talked to G.R., her husband, and the two oldest children. G.R. and her husband acknowledged the incident, signed a case plan agreeing that G.R. would attend parenting skills classes

---

[1] The record does not reveal the disposition of the criminal charges.

with a licensed social worker, and agreed to refrain from leaving their children unattended in a vehicle. Nevertheless, on the basis of the incident, the caseworker stated in her investigation summary that "[a]llegations of neglect are substantiated."

On January 28, 2008, the Division notified G.R. in writing that she neglected her son by leaving him unattended in the minivan, stating in pertinent part that

> the Division is required to send to local/State police certain identifying information regarding all <u>substantiated</u> incidents of child abuse and neglect in their jurisdiction.
>
> In addition, <u>N.J.S.A.</u> 9:6-8.10a authorizes the Division to identify confirmed perpetrators of child abuse or neglect to agencies, persons, or entities who are mandated by statute to consider such information when conducting background screenings of employees, prospective employees, interns, or volunteers who provide, or seek to provide, services to children. For certain employment, a substantiation of child abuse or neglect will prevent you from getting or keeping a job.[2]

The Division informed G.R. that she had the right to appeal from its initial determination and to request an OAL hearing. On February 8, 2008, G.R.'s counsel wrote to the Division,

---

[2] G.R.'s counsel reported to us at oral argument that G.R. has been employed as a school librarian.

requested a hearing, and demanded discovery of the Division's file materials.

In March 2008, the social worker who had conducted four parenting classes with G.R. notified the Division that she did not feel that G.R. was a risk to her children "in any way," and stated that the incident was "clearly a cultural difference."[3] The Division obtained reports from the children's pediatrician, a school nurse, and G.R.'s local police department, all showing that G.R. was a good and caring parent. As a result, the Division concluded that the children were safe, and it did not initiate a Title Nine action. On appeal, it is uncontested that the incident amounted to a one-time event and that G.R. was otherwise an attentive parent.

On April 2, 2008, the Division closed its file. The caseworker completed a Case Closing Checklist indicating that G.R. fully complied with the case plan by completing the parenting sessions, specifically noting the social worker's opinions that G.R. was "great with her children" and that the incident was the result of a "cultural clash." The caseworker also wrote in her case summary that "[m]om was very happy to hear that the case was being closed."

_____

[3] G.R. had recently immigrated to the United States from Germany, and she contended that in her former country it was not unusual to leave one's child unattended in a vehicle for a short time.

On May 1, 2008, an Appeals Administrator from the Department of Children and Families (the "Department") wrote to G.R. stating that the Department's Administrative Hearings Unit (AHU) had received her request for a hearing. The Appeals Administrator indicated in part that

> due to the volume of requests for appeals, it will take at least several months before the OAL will be able to hear your matter. You <u>will be provided with information</u> about your case during the discovery phase of the OAL <u>hearing</u> process.
>
> [(Emphasis added).]

One year and eight months later, on December 23, 2009, G.R.'s counsel wrote to the DAG to follow up on G.R's administrative appeal and reiterated G.R.'s request for a hearing.[4] G.R.'s counsel acknowledged that the DAG might be inclined to file a motion for summary disposition, but stated that such a motion would be "premature as no facts have yet been elicited at a hearing." The DAG did not respond to G.R.'s December 2009 letter until two years and eight months later. Finally, on August 27, 2012, the DAG provided the requested discovery and, to her credit, indicated that she had misplaced the file. The OAL failed to schedule a hearing in the interim and the AHU did not provide G.R. with any information about her appeal.

---

[4] G.R.'s counsel referenced various prior emails in his letter, but those emails are not a part of the record.

In January 2013, more than five years after the incident, the Division filed a motion for summary disposition pursuant to N.J.A.C. 10:120A-4.2. G.R. filed opposition contending that the motion was untimely and that there were disputed material facts requiring a hearing. G.R.'s counsel insisted that G.R. be afforded the opportunity to cross-examine the police officer, police dispatcher, and Division caseworker. However, the Director granted the Division's motion to proceed summarily and affirmed the substantiation of neglect. In part, the Division stated that

> the competent evidence in the record established that [the child] was left alone in the vehicle for at least [twenty-five] minutes. . . . The DAG [herself] observed that, as Target is located on the fourth level of the mall, it would be virtually impossible for G.R. to enter the mall, go to the fourth level, shop and pay for her items, exit and return to [the minivan] within five to ten minutes [as contended by G.R.[5]]

The Director adopted the DAG's observation and found that "[i]t is inconceivable that G.R. could enter the mall, . . . and at all times observe the [minivan] without any obstruction." The Director concluded that G.R. neglected the child pursuant to

---

[5] On appeal to us, the Division now concedes that Target has a side entrance accessible from the parking lot at ground level.

N.J.S.A. 9:6-8.21c(4)(b) and ordered that G.R.'s name be listed on the Registry pursuant to N.J.S.A. 9:6-8.11.

On appeal, G.R. argues that (1) the matter should be dismissed in the interests of justice because of the excessive delay between the incident and the DAG's motion for summary disposition; (2) the Director erred by granting the Division's motion because there existed disputed material issues of fact requiring a hearing; and (3) the incident does not constitute neglect under N.J.S.A. 9:6-8.21c(4)(b). Because we are remanding for further proceedings, we need not resolve G.R.'s contention that there was insufficient evidence for the Division to substantiate neglect.

## II.

We conclude that the Director erred by granting the Division's motion to proceed summarily and determining that there existed no disputed material facts. Motions for summary disposition of disputes before the Director are governed in general by N.J.A.C. 10:120A-4.2, which provides in pertinent part that

> (b) The Director of Legal Affairs or designee, in consultation with a representative of the Attorney General's Office, shall determine whether to proceed with a Motion for Summary Disposition, based on whether or not there are material facts in dispute.

> 1. When the Director of Legal Affairs or designee and the representative of the Attorney General's Office determine to proceed with a Motion for Summary Disposition because <u>no material facts are in dispute</u>, the case shall be transmitted to the Attorney General's Office for assignment for preparation of the Motion for Summary Disposition.

> [(Emphasis added).]

Here, there existed material disputed facts that required a hearing, including but not limited to: the length of time that G.R. was away from the minivan; whether G.R. used the parking lot-level entrance to Target or walked through the mall to reach the store; if she used the parking lot-level entrance, the distance between where she parked and that door; whether G.R. lost sight of the minivan while she was in the store, and if so, for how long; and whether there existed extenuating circumstances surrounding the incident. We make the following remarks to guide the parties on remand.

Pursuant to <u>N.J.S.A.</u> 9:6-8.21c(4)(b), an "abused or neglected child" means an individual under the age of eighteen years

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by

> unreasonably inflicting or allowing to be
> inflicted harm, or substantial risk thereof.

Our Supreme Court has defined "minimum degree of care" to proscribe "grossly or wantonly negligent" conduct that need not be intentional for the actor to be held liable. G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). A parent "fails to exercise a minimum degree of care when [the parent] is aware of the dangers inherent in a situation," but "fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181.

"Whether a parent or guardian has failed to exercise a minimum degree of care is to be analyzed in light of the dangers and risks associated with the situation." Id. at 181-82. A finding of abuse must be based on a preponderance of the "competent, material and relevant evidence." N.J.S.A. 9:6-8.46b. In 2011, the Court confirmed the "grossly negligent or reckless standard," but observed that "every failure to perform a cautionary act is not abuse or neglect." Dept. of Children & Families v. T.B., 207 N.J. 294, 306-07 (2011). Mere negligence does not trigger the statute. Ibid.

In assessing whether a parent who leaves a child unattended in a vehicle has exercised a minimum degree of care, we recently reiterated that the focus of the potential culpability aligns with

10                                                    A-4594-12T4

> the Legislature's expressed purpose to safeguard children. Indeed, where a parent or guardian acts in a grossly negligent or reckless manner, that deviation from the standard of care may support an inference that the child is subject to future danger. To the contrary, where a parent is merely negligent there is no warrant to infer that the child will be at future risk.
>
> [Dept. of Children & Families v. E.D.-O., 434 N.J. Super. 154, 158 (App. Div. 2014) (citation omitted).]

In E.D.-O., the mother left her nineteen-month-old child secured in a car seat in a locked and parked car with its engine running 150 feet from the store where she was shopping. Id. at 155-56. Affirming the Division's substantiation of neglect, we stated that, "[a] parent invites substantial peril when leaving a child of such tender years alone in a motor vehicle that is out of the parent's sight, no matter how briefly." Id. at 161. Yet in acknowledging that there may be circumstances that militate against a finding that a parent was grossly negligent, we also remarked that "we do not mean to suggest there are no circumstances in which a child might be left unattended in a motor vehicle without running afoul" of N.J.S.A. 9:6-8.21c(4)(b). Id. at 162.

The Division's analysis of whether a parent has committed an act of neglect should be conducted "on a case-by-case basis." T.B., supra, 207 N.J. at 306 (quoting G.S., supra, 157 N.J. at

182). The court or the Division should consider the totality of the circumstances in determining whether the parent's acts were sufficiently negligent to warrant placement on the Registry. See N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).

## III.

G.R. contends that we should vacate the final agency decision and dismiss the case in the interests of justice because (1) the inaction by the DAG, AHU, and OAL deprived her of administrative procedural due process; and (2) the Director's summary affirmance contravened principles of fundamental fairness. We disagree that G.R. was denied due process, but direct the parties to address G.R.'s fundamental fairness argument on remand.

### A.

G.R. focuses on two interrelated facts to support her contention that she was denied procedural due process: the DAG delayed filing the motion for summary disposition, and there was never a hearing before the OAL. G.R.'s failure to exercise available judicial remedies, however, militates against her claim that the she was deprived of procedural due process.

It is undisputed that the OAL failed to schedule a hearing, and that the AHU did not provide G.R. with information about the

12                                                    A-4594-12T4

status of the case or comply with N.J.A.C. 10:120A-4.2(a), which provides:

> When the [AHU] determines that an appellant is ineligible for an administrative hearing because of the absence of material disputed facts, the [AHU] recommends to the Director of Legal Affairs or designee that the matter is appropriate for a Motion for Summary Disposition.

We conclude, however, that G.R. could have applied to compel the Division to schedule and conduct an OAL hearing consistent with N.J.A.C. 10:120A-4.2(b)(2) (disallowing summary proceedings in matters involving disputed material facts) and N.J.A.C. 10:120A-4.3(a)(2) (requiring the AHU to transmit contested cases to the OAL). See Hosp. Ctr. at Orange v. Guhl, 331 N.J. Super. 322, 340 (App. Div. 2000) (indicating that "[t]he availability of . . . expeditious judicial remed[ies] may negate any claim that a party has been deprived of a constitutionally protected interest as a result of agency inaction").

The same opportunity existed regarding the delay caused by the DAG inadvertently misplacing the file. The DAG moved for summary disposition more than four years after G.R. could have reasonably expected to receive a hearing date. However, from December 2009 to January 2013, a period of about three years, G.R. did not inquire about the status of her pending administrative appeal. Although N.J.A.C. 1:1-12.5 provides that

A-4594-12T4

motions for summary disposition "must be filed no later than [thirty] days prior to the first scheduled [OAL] hearing date or by such date as ordered by the [Administrative Law] judge," G.R. failed to exercise judicial remedies that were available to her.

B.

G.R.'s fundamental fairness argument requires attention on remand because the Director did not consider the contention other than to state that G.R. was not prejudiced by the delay. As Justice Patterson recently stated in State v. Miller, 216 N.J. 40, 71-72 (2013), cert. denied, ___ U.S. ___, 134 S. Ct. 1329, 188 L. Ed. 2d 339 (2014), the doctrine of fundamental fairness

> is an integral part of due process, and is often extrapolated from or implied in other constitutional guarantees. The doctrine effectuates imperatives that government minimize arbitrary action, and is often employed when narrowed constitutional standards fall short of protecting individual[s] against unjustified harassment, anxiety, or expense.
>
> Fundamental fairness is a doctrine to be sparingly applied. The doctrine is applied in those rare cases where not to do so will subject [an individual] to oppression, harassment, or egregious deprivation.
>
> [(Emphasis added) (citations and internal quotation marks omitted).]

In limited circumstances, agency actions may be set aside as fundamentally unfair where the agency failed to act within a

reasonable time and the delay "evidence[d] an entire lack of that acute appreciation of justice which should characterize a tribunal with [such a] delicate and important duty." In re Arndt, 67 N.J. 432, 436-37 (1975) (alterations in original) (citation and internal quotation marks omitted) (concluding "the proceedings as a whole were conducted with seriously unfair disregard" of the party's rights).

Here, G.R. lived with the uncertainty of whether her name would appear on the Registry for approximately five years. The Registry serves an important public function by assuring that adoption agencies, employers such as day care centers, and other organizations that deal with children are apprised of the harmful conduct that led a particular individual to be listed on the Registry. N.J. Div. of Youth & Family Servs. v. M.R., 314 N.J. Super. 390, 399-402 (App. Div. 1998). Yet the adverse reputational consequences for an innocent individual listed in the Registry can be devastating. See N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 27 (App. Div. 2004), certif. denied, 182 N.J. 426 (2005). Disclosing a name from the Registry "'not only injure[s] [a person's] good name' but also significantly limits that person's 'capacity to obtain employment in a vast array of education-related jobs.'" Div. of Youth & Family Servs. v. D.F., 377 N.J. Super. 59, 66 (App. Div.

2005) (alterations in original) (citation omitted). And although Registry reports are deemed confidential, they "may be disclosed as authorized in N.J.S.A. 9:6-8.10a [listing twenty-three entities entitled to Registry records upon request], subject to certain restrictions." M.R., supra, 314 N.J. Super. at 399-400. On this record, we are unable to determine whether G.R. suffered from unjustified anxiety or expense, or whether the Division's failure to apply the fundamental fairness doctrine subjected her to oppression or egregious deprivation.

IV.

We conclude primarily that G.R. is entitled to an administrative hearing because the parties have disputed material facts. On remand, G.R. may renew her contentions that she is entitled to a dismissal based on the five-year delay or on the grounds of fundamental fairness. We note that delay alone "will not generally affect the validity of an administrative determination, particularly where no prejudice is shown." In re Kallen, 92 N.J. 14, 27 (1983) (citation and internal quotation marks omitted); see also State v. Yoskowitz, 116 N.J. 679 (1989) (remanding for the trial court to determine if prosecution was barred by principles of fundamental fairness, as the record was inadequate on that issue). We express no opinion on the merits of G.R.'s request to dismiss the case or

whether the incident constituted neglect under the statute because both issues are dependent on the remand proceedings.

Reversed and remanded for further proceedings consistent with this opinion and applicable law. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4594-12T4