**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5589-18

PASQUALE FALCETTI, JR.,

     Plaintiff-Appellant,

v.

WATERFRONT COMMISSION
OF NEW YORK HARBOR,

     Defendant-Respondent,

and

PAUL BABCHIK,

     Defendant.

_____

        Argued April 21, 2021 – Decided August 23, 2021

        Before Judges Ostrer, Accurso, and Vernoia.

        On appeal from the Superior Court of New Jersey, Law
        Division, Essex County, Docket No. L-4916-14.

        George T. Daggett argued the cause for appellant.

Jennifer R. O'Connor argued the cause for respondent (Saiber, LLC, attorneys; Jennifer R. O'Connor, on the brief).

PER CURIAM

Plaintiff Pasquale Falcetti, Jr., appeals from the trial court's May 23, 2019 order granting summary judgment to defendant Waterfront Commission of New York Harbor (the Commission) and dismissing plaintiff's claims for: (1) specific performance, requesting the court order the Commission to register plaintiff as approved to work on the waterfront in New York Harbor (the waterfront); (2) tortious interference with economic advantage; (3) violation of plaintiff's constitutional rights; (4) failure to act; and (5) breach of duty. Plaintiff also appeals from a July 12, 2019 order denying his motion for reconsideration. Unpersuaded by plaintiff's arguments, we affirm.

I.

"We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court." Abboud v. Nat'l Union Fire Ins. Co., 450 N.J. Super. 400, 406 (App. Div. 2017). This standard mandates the grant of summary judgment "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no

A-5589-18

genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

Rule 4:46-2 requires that a motion for summary judgment be supported by a statement of material facts which "cit[es] to the portion of the motion record establishing [each] fact or demonstrating that [each fact] is uncontroverted." R. 4:46-2(a). "[A] party opposing a motion for summary judgment [must] 'file a responding statement either admitting or disputing each of the facts in the movant's statement.'" Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(b)). "[A]ll material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact." R. 4:46-2(b). In our review of a summary judgment record, we limit our determination of the undisputed facts to those properly presented in accordance with Rule 4:46-2. Kenney v. Meadowview Nursing & Convalescent Ctr., 308 N.J. Super. 565, 573 (App. Div. 1998).

We glean the following undisputed facts based on our review of the parties' respective Rule 4:46-2 statements.[1]  The Commission was created in 1953 by compact between the states of New Jersey and New York "as an agency of both states, with the authority to license or register workers, and, for good cause, to refuse licenses or registrations, and to regulate labor and hiring practices on the waterfront."[2]  In re Application of Waterfront Comm'n, 32 N.J. 323, 331-32 (1960); see also L. 1953, c. 202, c. 203; Waterfront Commission Act (the Act), N.J.S.A. 32:23-1 to -228.[3]  "[T]he primary purpose of this bistate legislation was the elimination of corruption on the waterfront . . . ."  Waterfront Comm'n v. Mercedes-Benz of N. Am., Inc., 99 N.J. 402, 409 (1985).

---

[1]  In his responses to the Commission's statement of material facts, plaintiff does not provide a single citation to the record.  See R. 4:46-2(a) to (b).  As a result, we deem admitted each sufficiently supported fact proffered in the Commission's Rule 4:46-2 statement.  See ibid.

[2]  The parties also present applicable law in their respective Rule 4:46-2 statements, and we likewise reference relevant law within our summary of the undisputed facts.

[3]  The Act was effectively repealed on January 16, 2018, by L. 2017, c. 324, which: repealed N.J.S.A. 32:23-1 to -225; continued in effect only N.J.S.A. 32:23-226 to -228; and added new provisions, N.J.S.A. 32:23-229 to -230 and N.J.S.A. 53:2-8 to -36, that, in pertinent part, transferred the investigative functions of the Commission to the New Jersey State Police.  In our discussion of the issues presented on appeal, we apply, and cite to, provisions of the Act in effect prior to January 16, 2018, because the Commission's actions plaintiff challenges in his complaint occurred prior to that date.

Plaintiff is a member of the International Longshoreman's Association (ILA).[4] Longshoremen must be registered by the Commission to work on the waterfront. The Commission may deny registration to an applicant "found by the [C]ommission on the basis of the facts and evidence before it, to constitute a danger to the public peace or safety." N.J.S.A. 32:23-29(c). The Commission also may deny registration based upon an applicant's "[a]ssociation with a person who has been identified by a federal, State[,] or local law enforcement agency as a member or associate of an organized crime group," or "convicted of a racketeering activity" if registration "would be inimical to the policies of [the A]ct." N.J.S.A. 32:23-92(6) to (7).

---

[4]  The Commission asserts in its Rule 4:46-2 statement that "[t]he ILA is a collective bargaining representative of longshoremen and other waterfront workers employed in the Port."  The Act's definition of "[l]ongshoreman" includes, in pertinent part, "a natural person, other than a hiring agent, who is employed for work at a pier or other waterfront terminal" "either by a carrier of freight by water or by a stevedore physically to perform labor or services incidental to the movement of waterborne freight on vessels berthed at piers, on piers[,] or at other waterfront terminals, including, but not limited to, . . . general maintenance men." Mercedes-Benz, 99 N.J. at 407 (quoting N.J.S.A. 32:23-85(6)(a)). "Generally, the Act defines 'stevedore' as a contractor engaged by a third party to move waterborne freight, or to perform labor and services incidental to the movement of freight, on ships berthed at piers, on the piers themselves, or at other waterfront terminals." Id. at 410 n.7 (first citing N.J.S.A. 32:23-6; and then citing N.J.S.A. 32:23-85(1)).

The parties agree the Commission carried out its operations through various divisions, including the Law Division, which investigated license and registration applicants to determine if they satisfied the Act's standards and requirements. The Commission's Police Division investigated criminal activity on the waterfront, conducted background checks of license and registration applicants, and maintained the Commission's investigative files. The Intelligence Division collected and analyzed data concerning organized crime and racketeering activities on the waterfront.

In April 2012, plaintiff applied for registration to work on the waterfront. At the time, plaintiff worked for Apexel, LLC, a subsidiary of Maher Terminals, LLC (collectively Apexel). Prior to 2012, Apexel employees at the facility where plaintiff worked were not within the Commission's jurisdiction, but the employees "moved into" the Commission's jurisdiction following relocation of the facility in 2012. Apexel sponsored plaintiff's application for registration. See N.J.S.A. 32:23-114 ("The [C]ommission shall accept applications for inclusion in the longshoremen's register: (a) upon the joint recommendation in writing of stevedores and other employers of longshoremen [on] the [waterfront], acting through their representative for the purposes of collective bargaining with a labor organization representing such longshoremen[;] . . . or

6

(b) upon the petition in writing of a stevedore or other employer of longshoremen [on] the [waterfront] . . . .").

In his application, plaintiff stated he had "knowingly associated with a[] person known or reputed to be a member or associate of an organized crime group," and he indicated his "father . . . was arrested in 2001 or 2002, was away for [five] and a half years[,] and [is] now back, off parole[,] and working."[5] Plaintiff also answered in the application that he had "been arrested for, charged with, indicted for, or convicted of the commission of or the attempt or conspiracy to commit any crime or offense," and stated "he had been charged with 'leaving the scene of [an] accident.'" Plaintiff also reported he had "been

_____

[5] The Commission also reports in its statement of material facts, see R. 4:46-2(a), that "[p]laintiff's father, Pasquale Falcetti, Sr., has been identified by numerous law enforcement agencies as a capo in the Genovese organized crime family." The Commission asserts, "In 2003, Falcetti, Sr.[,] was charged in a civil [Racketeer Influenced and Corrupt Organizations (RICO)] complaint for extortion conspiracy and racketeering activities on the waterfront," the final result of which was his "convict[ions for] defrauding the pension and welfare benefit fund for [waterfront] employees," and for "conspiracy to extort money from owners, officers, employees and agents of the businesses operating [on] the [waterfront] and from other ILA . . . union positions." The Commission states that following his convictions, Falcetti, Sr., "was permanently enjoined from any commercial activity [on] the [waterfront]." Finally, the Commission claims that "[i]n 2014, [Falcetti, Sr.,] was again convicted for extortion conspiracy and sentenced to [thirty] months imprisonment." Plaintiff does not deny these facts in its response or counterstatement of material facts, and we therefore deem them admitted for purposes of the Commission's summary judgment motion. See R. 4:46-2 (a) to (b).

A-5589-18

named . . . or referred to in an[] indictment or other accusatory instrument (including as an unindicted co-conspirator) or been named in or the subject of a search warrant or court ordered electronic surveillance," and indicated "he had been 'asked about on a case of Harold Daggett about how [plaintiff] got the job of a [l]ongshoreman.'"[6]

"After receipt of [p]laintiff's application, the . . . Commission commenced an investigation to determine whether [p]laintiff satisfied the statutory requirements to be registered as a maintenance worker." The investigation was "undertaken by a team . . . of senior and assistant counsel[], police detectives[,] and intelligence analysts."[7] "[T]he . . . Commission conducted two separate

---

[6] The Commission asserts in its Rule 4:46-2 statement that "Harold Daggett is the [p]resident of the [ILA]."

[7] Plaintiff denies the Commission's contention in his response to the Commission's Rule 4:46-2 statement, see R. 4:46-2(b), because the Commission "claimed privilege in connection with its investigation," and its "assertion of privilege render[ed] [p]laintiff[ unable] to answer [these m]aterial [f]act[s]." However, following this denial, plaintiff admits Paul Babchik, Esq., the Commission's senior counsel, "was the lead attorney supervising the investigation," and that, "[o]n June 27, 2012, . . . Babchik advised [p]laintiff's counsel," George Daggett, Esq., "that the . . . Commission had commenced an investigation to determine whether [p]laintiff met the eligibility requirements." Plaintiff also admits "Babchik specifically advised that the . . . Commission was investigating, among other things, [the] admissions made by [p]laintiff in [his] application." Plaintiff otherwise admits the existence of an "investigation"

interviews of [p]laintiff . . . on September 5, 2012 and October 23, 2013," and questioned plaintiff "about the various answers he provided . . . in [his] application." "Plaintiff was also questioned about his employment (while his application was pending) at . . . the Nyack Pour House, his receipt of unemployment benefits while he was employed [there,] . . . and the reporting of his income on his tax returns." The Commission also "issued numerous subpoenas on the Nyack Pour House, seeking documents and testimony related

---

throughout his responses to the Commission's statement of material facts. See R. 4:46-2(a) to (b).

In Falcetti v. Waterfront Commission of New York Harbor (Falcetti I), No. A-1082-15 (App. Div. Dec. 23, 2016) (slip op. at 19-20), we vacated the trial court's order granting plaintiff's motion to compel discovery of the Commission's investigatory file and remanded for the court to consider the Commission's privilege log and perform the requisite balancing test of the competing interests in disclosure of the documentation under Loigman v. Kimmelman, 102 N.J. 98, 112-13 (1986). In Falcetti v. Waterfront Commission of New York Harbor (Falcetti II), No. A-2912-16 (App. Div. July 5, 2017) (slip op. at 10-11), we again vacated and remanded the court's order compelling disclosure of the documentation because the court did not make the requisite findings of fact and conclusions of law pursuant to Rule 1:7-4(a).

The record does not disclose the court's actions following our second remand, and plaintiff does not appeal from any order entered following the remand or argue the court erred following the second remand by determining the Commission's investigative materials should not be provided in discovery based on privilege or otherwise. Thus, any claim the court erred by determining on remand that plaintiff is not entitled to discovery of investigative materials is waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (explaining "issue[s] not briefed on appeal [are] deemed waived").

A-5589-18

to [p]laintiff's employment," and "conducted an interview . . . [of] one of the owners of the [establishment], regarding [p]laintiff's work schedule and salary," on July 31, 2013.[8] Throughout its investigation, the Commission "also requested extensive documents from [p]laintiff, which [he] produced."

On or just prior to July 3, 2014, "Babchik . . . spoke (by telephone) with Jay Ruble, Esq., Apexel's General Counsel." Following their conversation, "Ruble emailed and mailed a letter to the . . . Commission formally withdrawing Apexel's sponsorship of [p]laintiff's application." As a result of "Apexel's withdrawal of [plaintiff's] sponsorship," the Commission was "statutorily precluded [from taking] any further action . . . on [p]laintiff's application." See N.J.S.A. 32:23-114. "On July 8, 2014, the . . . Commission notified [p]laintiff that his application . . . had been administratively withdrawn for lack of employer sponsorship."

---

[8] Plaintiff again asserts in his response to the Commission's Rule 4:46-2 statement that he cannot respond to "this [m]aterial [f]act because the [Commission] claimed privilege." However, the Commission supports this fact with citation to competent record evidence, see R. 4:46-2(a) to (b), and, moreover, "[p]laintiff's counsel admitted . . . he was made aware from independent sources of activities taken by the . . . Commission's Police Division in connection with its investigation of [p]laintiff," and plaintiff's counsel wrote to Babchik in a May 7, 2013 email, "I learned today that . . . Commission employees visited an establishment where [plaintiff] has been working in order to survive."

Plaintiff filed a complaint on July 14, 2014, "alleging [the Commission] intentionally delayed and took no action in connection with [plaintiff's] application," and seeking an order requiring the Commission to immediately register him.  Plaintiff also demanded punitive damages, counsel fees, costs, and lost wages from April 2012 forward.[9]

Following the conclusion of discovery, which included the depositions of Babchik and Ruble, plaintiff filed an amended complaint asserting five causes of action: (1) specific performance, "demand[ing a] judgment mandating that the . . . Commission . . . immediately register . . . [p]laintiff as an approved employee"; (2) tortious interference with economic advantage; (3) violation of plaintiff's constitutional rights; (4) failure to act; and (5) breach of duty.  Each cause of action plaintiff asserted in the amended complaint was premised upon one, or both, of the following factual assertions: (1) that the Commission "deliberately delayed the application process for . . . [p]laintiff in hopes that [he] . . . would withdraw his application"; and (2) that Babchik threatened, coerced, or otherwise "induced" Ruble during their 2014 phone conversation to withdraw plaintiff's sponsorship.

---

[9]  Plaintiff's July 14, 2014 complaint is not included in the record on appeal.

We briefly describe Babchik's and Ruble's testimony concerning the contents of their 2014 conversation preceding Apexel's withdrawal of plaintiff's sponsorship. Ruble testified that during the conversation, "one of the things . . . Babchik had mentioned to him was, '[D]o you know who [plaintiff's] father is[?]'", and "Ruble responded that he did not." Ruble stated he "believe[d Babchik] referenced something like a banned list" concerning plaintiff's father, but he did not "recall if that[ was] the actual term." Ruble claimed, "having heard that[, he] asked . . . Babchik, . . . 'What's the implications of that?'", and Babchik responded, "[C]ertainly [plaintiff] would require a hearing." Ruble testified he could not "recall if . . . Babchik gave [him] a specific amount of time that [the process] would probably take," and "Babchik . . . didn't [tell him] it was going to take a long time," but Ruble "believe[d] it was apparent from the conversation that it was going to take a long time." Ruble testified "the reason Apexel . . . withdr[ew] its sponsorship . . . [was] because it was going to take a long period of time and Apexel didn't want to wait any longer."

Ruble testified "Apexel [did not] withdraw its sponsorship of [plaintiff] because . . . Babchik asked [him] who [plaintiff's] father was," nor "[d]id . . . Apexel withdraw its sponsorship . . . because . . . Babchik told [him] . . . [plaintiff]'s father is on a banned list." Ruble further testified Babchik

did not "threaten" or "coerce [him] into withdrawing [plaintiff's] sponsorship"; "Babchik [did not] threaten that the . . . Commission would take any action against [him] if . . . Apexel continued [plaintiff's] sponsorship"; "Babchik [did not] threaten that the . . . Commission would take any action against . . . Apexel if they continued [plaintiff's] sponsorship"; Babchik did not "impl[y] . . . that the . . . Commission would not renew [Apexel]'s . . . license if it continued [plaintiff's] sponsorship"; and "Babchik said [nothing] to [him] at any point . . . that gave [him] the impression . . . that the . . . Commission would not renew [Apexel]'s . . . license if it continued [plaintiff's] sponsorship." Finally, Ruble testified he did not recall Babchik asking him, "Are you sure you want [plaintiff] working for . . . Apexel?"

Babchik likewise testified he did not threaten, coerce, or instruct Ruble to withdraw the sponsorship, and that he never asked Ruble if Ruble was "sure [he] want[ed plaintiff] to work at Apexel." However, Babchik testified that during the call, Ruble "apologized to [him] . . . [and] said that he should have told [Babchik] eight months ago, but [Ruble] had asked around at [Apexel] . . . and no one had heard of [plaintiff], and . . . for that reason they were withdrawing

[their] sponsorship."[10]  Ruble testified he did not recall giving that reason to Babchik; he did not recall doing any investigation into plaintiff prior to his and Babchik's 2014 conversation; he did not recall telling Babchik "no one [knew]" plaintiff; and he "would believe" "people [at Apexel] . . . [knew] who [plaintiff] was."

Babchik testified that "[f]rom 2012 until . . . [approximately] June of 2013," the Commission's investigation "had . . . disclosed . . . reason[s] to disqualify [plaintiff] from registration."[11]  However, Babchik stated he did not advise anyone outside of the Commission's authority of any reasons to disqualify plaintiff.  When plaintiff's counsel asked Babchik, "What took so long to not deny [plaintiff's] application if you said there was a reason . . . between 2012 and 2013?", Babchik responded, "The ongoing investigation and awaiting a manpower assessment from [Apexel]."[12]  The record further establishes that

---

[10]  Babchik also testified the Commission's investigation did not reveal whether plaintiff actually worked for Apexel, only that he was on Apexel's payroll.

[11]  Babchik was instructed by his counsel "not to answer [what those reasons were] on the basis of the law enforcement investigatory privilege."

[12]  Ruble testified that he did not recall "Babchik [ever asking him] to do a manpower assessment," and he "ha[d] no recollection of" "[p]romising . . . Babchik at any time from 2012 to 2014 that [he] would do a manpower assessment or . . . a staffing assessment in connection with" plaintiff's application.

during Babchik's deposition, he testified additional reasons supporting the possible denial of plaintiff's application were developed during the period of 2013 to 2014, and that, at the time of the deposition, the investigation into plaintiff's application was still ongoing. During the investigation, Babchik received "a number of emails" from plaintiff's counsel concerning "why [plaintiff's] application was taking so long."

The Commission moved for summary judgment. The court heard argument on the Commission's motion, and, in an opinion from the bench, granted the motion. The court found "[n]othing in [the] record suggests or establishes any arbitrary conduct [or malice] on the part of the [Commission] in connection with [plaintiff's] application." The court acknowledged the application "took over . . . two years to investigate," but noted "it was not . . . a simple investigation that did not raise issues." The court also found plaintiff presented no evidence of a "time limitation[]" on the Commission's investigation, and he did not offer any "evidence that the delay was unreasonable or unjustified."

The court further noted that the Commission was conducting its investigation over the two-year period, and the investigation had not yet been completed when the sponsorship was withdrawn. The court also found Babchik

15

informed plaintiff's counsel "throughout that period of what was going on." The court then explained there is no constitutional "guarantee of registration to any applicant," and that "before [the investigation] was concluded[,] Apexel withdrew its sponsorship of the application . . . . And without that sponsorship[,] the Commission . . . didn't have jurisdiction" to grant or deny plaintiff's application.

The court concluded plaintiff did not present any competent evidence supporting his "whole underlying argument" that the Commission "acted arbitrarily, capriciously, or unreasonably" by either threatening or directing Ruble to withdraw plaintiff's sponsorship or by intentionally and unduly delaying its investigation, and that, as a result, plaintiff did "not sustain a cause [of action] . . . against the Commission." The court entered an order awarding the Commission summary judgment on May 23, 2019.

Plaintiff filed a motion for reconsideration of the summary judgment order, which the court denied on July 12, 2019. In an oral opinion, the court found plaintiff's motion for reconsideration was "identical to the motion the [c]ourt[] already decided," and merely "a re-argument of the claims from [plaintiff's] original [opposition to] summary judgment." The court explained plaintiff failed to demonstrate that "[t]he [c]ourt expressed its decision based on

16

a palpably incorrect or irrational basis," or "[t]he [c]ourt did not consider or fail[ed] to appreciate the significance of probative competent evidence," see Kornbleuth v. Westover, 241 N.J. 289, 301 (2020), and, therefore, plaintiff did not sustain his burden to warrant reconsideration.

Plaintiff appeals from the court's May 23, 2019 order granting summary judgment to the Commission and the court's July 12, 2019 order denying his reconsideration motion.[13] Plaintiff's brief on appeal includes three point headings in the Legal Argument section of his Table of Contents. The point headings are:

---

[13] The Commission argues plaintiff's appeal of the court's summary judgment award was untimely, and that we thus should not address plaintiff's arguments concerning the summary judgment order. However, where "a motion for reconsideration [of a summary judgment order] . . . implicate[s] the substantive issues in the case and the basis for the motion judge's ruling on the summary judgment and reconsideration motions . . . [are] the same," "an appeal solely from . . . the denial of reconsideration may be sufficient for . . . appellate review of the merits of the case, particularly where those issues are raised in the [case information statement (CIS)]." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461 (App. Div. 2002). Here, although plaintiff's initial notice of appeal stated he appealed only from the court's July 12, 2019 order denying reconsideration, plaintiff indicated in his CIS that he also appealed from the May 23, 2019 order granting summary judgment. Further, "the basis for the motion judge's ruling on the summary judgment and reconsideration motions [is] . . . the same," ibid.; the court stated plaintiff's arguments in his motion for reconsideration were "identical to the motion the [c]ourt[] already decided" on summary judgment. Thus, even if plaintiff's appeal from the summary judgment order was untimely, we must necessarily review the order to render a proper determination on the court's order denying reconsideration. See ibid.

Point I

The June-July Conversation Between Babchik and Ruble

Point II

The Summary Judgment in this Case Should Have Been Denied

Point III

The Motion for Reconsideration Should Have Been Granted

II.

Initially, we note plaintiff's first point heading does not identify any legal argument, nor does plaintiff make any legal argument under this point heading in his brief. Instead, in Point I plaintiff sets forth certain testimony of Ruble and Babchik, which he claims is contradictory, and he discusses Ruble's inability at deposition to recall certain conversations with Babchik. Plaintiff asserts that because Ruble "was [forty-six] years old and had been [c]orporate [c]ounsel for [Apexel] since 2006," "the inference arises as to Ruble's loss of memory" that "clearly . . . [Ruble] did not want the fact finder to know exactly what happened." However, plaintiff does not tether these claims to any legal arguments or authority. We discern from plaintiff's brief that the purported facts

18

included in Point I are actually directed towards plaintiff's Point II argument that the court erred in granting the Commission summary judgment.

Although plaintiff argues in Point II of his brief that the court's grant of summary judgment to the Commission was in error, plaintiff again does not offer any specific legal arguments or provide a single citation to applicable law in support of his contention. To be sure, he argues we should reverse the summary judgment award because the Commission allegedly delayed its investigation into his application and Babchik allegedly threatened Ruble to withdraw his sponsorship. However, plaintiff offers no legal arguments, or citations to applicable law, explaining how those factual assertions, if true, would preclude judgment in the Commission's favor as a matter of law. See R. 2:6-2(a)(6) (requiring "the brief of the appellant [to] contain[,] . . . under [a] distinctive title[]," "[t]he legal argument for the appellant, which shall be divided, under appropriate point headings, distinctively printed or typed, into as many parts as there are points to be argued"); see also Hayling v. Hayling, 197 N.J. Super. 484, 488-89 (App. Div. 1984) (explaining Rule 2:6-2(a)(6) is intended to ensure an appellant provides a reviewing court with "an orderly and considered presentation of the matter on appeal so that the court 'may have before it such parts of the record and such legal authorities as will be of help in arriving at a

19

proper determination'" (quoting Abel v. Elizabeth Bd. of Works, 63 N.J. Super. 500, 509 (App. Div. 1960))).

Both the Commission and this court have "a right to know precisely what legal arguments are being made and . . . need not respond to oblique hints and assertions." Almog v. Isr. Travel Advisory Serv., Inc., 298 N.J. Super. 145, 155 (App. Div. 1997).  It is not the role of this court to weave together the fabric of an argument on plaintiff's behalf, or to fashion hypothetical arguments which may support a finding of a genuine issue of material fact as to one of plaintiff's claims.  Thus, because plaintiff presents no specific legal arguments concerning how the facts alleged in his brief, if true, raise a genuine issue of material fact as to any of his claims, and does not cite to any legal authority supporting such a finding, he fails to establish the court erred by granting the Commission summary judgment.  See R. 2:6-2(a)(6); R. 4:46-2(c); see also Hayling, 197 N.J. Super. at 488-89; Abel, 63 N.J. Super. at 509; Almog, 298 N.J. Super. at 155. We therefore affirm the summary judgment order.

Despite plaintiff's failure to identify any legal arguments supporting his claim the court erred by granting summary judgment on the five causes of action asserted in the complaint, as noted, we discern from his brief on appeal that he contends the court erred because the evidence establishes that Babchik

20

threatened, coerced, or directed Ruble to withdraw Apexel's sponsorship, and the Commission purposely or unreasonably delayed its investigation to avoid providing plaintiff with a hearing or a denial of his application. Although plaintiff does not discuss these factual assertions in the context of any legal argument related to the court's summary judgment award on his asserted causes of action, they clearly provide the singular foundation for plaintiff's arguments on appeal. Plaintiff's argument must therefore fail because the record is bereft of competent evidence establishing, or demonstrating a genuine issue of material fact as to whether Babchik threatened, coerced, or directed Ruble to withdraw the sponsorship or the Commission's investigation was purposely or unreasonably delayed.

First, although he repeatedly claims Babchik threatened Ruble to withdraw his application, plaintiff also then illogically "concedes . . . Ruble did not have a gun to his head, nor was . . . Apexel threatened with interference with its license by the . . . Commission." (Emphasis added). Plaintiff does not cite to any record evidence supporting his repeated claim that Babchik "threatened" Ruble to obtain withdrawal of Apexel's sponsorship. Plaintiff also repeatedly asserts Ruble "was told by . . . Babchik to withdraw the sponsorship," (emphasis added), but that claim again is untethered to a citation to any evidence. Plaintiff

21

A-5589-18

appears to fail to understand that repeating a purported factual assertion numerous times in a brief does not make it true and does not create a factual issue that defeats a proper summary judgment motion. Plaintiff was required to support his factual assertions with citations to competent evidence, and he failed to sustain that burden.

"Competent opposition [to a summary judgment motion] requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Ord. Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). "'[C]onclusory and self-serving assertions' . . . without explanatory or supporting facts will not defeat a meritorious motion for summary judgment." Id. at 425-26 (quoting Puder v. Buechel, 183 N.J. 428, 440 (2005)); see also James Talcott, Inc. v. Shulman, 82 N.J. Super. 438, 443 (App. Div. 1964) ("Mere sworn conclusions of ultimate facts, without material basis or supporting affidavits by persons having actual knowledge of the facts, are insufficient to withstand a motion for summary judgment.").

Here, plaintiff's contention Babchik instructed or threatened Ruble to withdraw his sponsorship is not only unsupported by "competent evidential

material," Hoffman, 404 N.J. Super. at 426 (quoting Merchs. Express, 374 N.J. Super. at 563), it is directly contradicted by the record evidence. Ruble unequivocally testified Babchik did not "threaten" or "coerce [him] into withdrawing [plaintiff's] sponsorship," and that "the reason Apexel . . . withdr[ew the] sponsorship . . . [was] because" Ruble inferred from his and Babchik's conversation that the approval process for plaintiff "was going to take a long period of time[,] and Apexel didn't want to wait any longer." Babchik also testified he did not threaten Ruble to withdraw the sponsorship, and both Babchik and Ruble testified Babchik did not otherwise direct Ruble to withdraw the sponsorship.

Plaintiff's claims Babchik threatened, coerced, or directed Ruble to withdraw the sponsorship are based entirely upon "'speculation' and 'fanciful arguments.'" Ibid. (quoting Merchs. Express, 374 N.J. Super. at 563). Therefore, the court correctly found these claims did not raise a genuine issue of material fact precluding summary judgment to the Commission on any of plaintiff's causes of action. See ibid. (quoting Merchs. Express, 374 N.J. Super. at 563); Puder, 183 N.J. at 440-41; James Talcott, Inc., 82 N.J. Super. at 443; see also R. 4:46-2(c).

Plaintiff also does not cite to any competent evidence supporting a finding the Commission intentionally delayed its investigation; that the Commission's investigation was delayed in any way; or that the Commission had any desire to impede plaintiff's registration. Plaintiff does not argue the entirety, or any specific aspect, of the Commission's investigation took longer for him than it would have, or should have, for any other applicant who provided the same responses as plaintiff on the application. Plaintiff also does not dispute the Commission was actively investigating him from 2012 to 2014, or that the Commission had the statutory authority to do so based upon his affirmative responses on the application. See generally N.J.S.A. 32:23-10(11) to -86(4); see also N.J.S.A. 32:23-92(6) to (7); N.J.S.A. 32:23-29(c). Plaintiff offers only the conclusory assertion that, two years after submitting his application, the Commission had not approved or denied him, and therefore the Commission intentionally delayed its investigation.

Plaintiff's "conclusory and self-serving assertions"—that the Commission intentionally delayed its investigation; the Commission had some ill-intent towards plaintiff; or that the investigation was in any way delayed—"without explanatory or supporting facts," Hoffman, 404 N.J. Super. at 425-26 (quoting Puder, 183 N.J. at 440), constitute "mere 'speculation,'" id. at 426 (quoting

A-5589-18

Merchs. Express, 374 N.J. Super. at 563), and thus "[can]not [serve to] defeat [the Commission's] motion for summary judgment," id. at 425-26; see also Puder, 183 N.J. at 440-41; James Talcott, Inc., 82 N.J. Super. at 443. Plaintiff was required to provide competent evidence supporting those assertions in his opposition to the Commission's motion. See R. 4:46-2(c); Hoffman, 404 N.J. Super. at 425-26; Puder, 183 N.J. at 440-41. He did not. Therefore, we concur with the court's finding that plaintiff's claim that the Commission intentionally or unreasonably delayed its investigation did not raise a genuine issue of material fact precluding summary judgment to the Commission. See R. 4:46-2(c); Hoffman, 404 N.J. Super. at 425-26; Puder, 183 N.J. at 440-41.

Finally, although plaintiff did not make the following argument before the trial court, see Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973) ("[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959))), and did not brief the issue on appeal, see Sklodowsky, 417 N.J. Super. at 657, we nonetheless acknowledge that "[i]n limited circumstances, agency actions may be set aside

as fundamentally unfair where the agency failed to act within a reasonable time and the delay 'evidence[d] an entire lack of that acute appreciation of justice which should characterize a tribunal with [such a] delicate and important duty.'" N.J. Div. of Child Prot. & Permanency v. G.R., 435 N.J. Super. 392, 403 (App. Div. 2014) (second and third alterations in original) (quoting In re Arndt, 67 N.J. 432, 436-37 (1975)). We further explained the doctrine of fundamental unfairness "effectuates imperatives that government minimize arbitrary action, and [it] is often employed when narrowed constitutional standards fall short of protecting individual[s] against unjustified harassment, anxiety, or expense." Ibid. (second alteration in original) (quoting State v. Miller, 216 N.J. 40, 71 (2013)). The "doctrine [is] to be sparingly applied," and only "in those rare cases where not to do so will subject [an individual] to oppression, harassment, or egregious deprivation." Ibid. (second alteration in original) (quoting Miller, 216 N.J. at 71-72).

As noted, however, plaintiff presents no evidence of undue delay or arbitrary action in the Commission's investigation, nor does he offer evidence supporting a finding the Commission failed to act within a reasonable time.

26

Plaintiff merely notes the amount of time that elapsed between him filing the application and Apexel's withdrawal of his sponsorship.[14]

Plaintiff argues the investigation was unduly delayed because Babchik testified he uncovered reasons to deny plaintiff registration during the period of 2012 to 2013 but he did not advise plaintiff of those reasons or deny plaintiff's application at that time. Plaintiff does not cite to any legal authority supporting the proposition that the Commission had an obligation to inform him of reasons it developed to deny the application during its ongoing investigation, and plaintiff's argument ignores Babchik's testimony that the Commission's investigation continued to develop reasons to deny plaintiff's application in 2013 and 2014, and that the investigation continued even after Apexel withdrew its sponsorship. The Commission was entitled to complete its investigation prior to rendering a final determination on plaintiff's application, and, as noted, plaintiff provides no evidence the Commission's ongoing investigation was unreasonably conducted or unduly delayed.

---

[14] We note plaintiff did not appeal from the trial court's determination, following our remand in Falcetti II, concerning the Commission's privilege log, and plaintiff does not argue on appeal that his inability to review that documentation rendered him unable to determine the reasonableness of the Commission's investigation.

In sum, the entirety of plaintiff's complaint, as well as his arguments on appeal, hinge either on his assertion (1) that Babchik threatened, coerced, or directed Ruble to withdraw plaintiff's sponsorship, or (2) that the Commission intentionally, unduly, or unreasonably delayed its investigation. Those assertions constitute "mere 'speculation,'" unsupported by the evidentiary record. Hoffman, 404 N.J. Super. at 426 (quoting Merchs. Express, 374 N.J. Super. at 563). The court therefore correctly determined plaintiff failed to raise a genuine issue of material fact precluding summary judgment to the Commission on any of his claims. Id. at 425-26; see also Puder, 183 N.J. at 440-41; R. 4:46-2(c).

## III.

We next address plaintiff's argument the court erred by denying his motion for reconsideration of the summary judgment order. "[A] motion for reconsideration 'is not properly brought simply because a litigant is dissatisfied with a judge's decision, nor is it an appropriate vehicle to supplement an inadequate record.'" Guido v. Duane Morris LLP, 202 N.J. 79, 87 (2010) (citation omitted). Rather, a motion for reconsideration "is primarily an opportunity to seek to convince the court that either 1) it has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious

that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Kornbleuth, 241 N.J. at 301 (quoting Guido, 202 N.J. at 87-88). "[T]he aggrieved party [must] 'state[] with specificity the basis on which [the motion for reconsideration] is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred.'" Ibid. (fourth alteration in original) (quoting R. 4:49-2).

"We will not disturb the trial court's reconsideration decision 'unless it represents a clear abuse of discretion.'" Ibid. (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 302 (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).

Because we find the court did not err in granting the Commission summary judgment, we also find the court did not err in denying reconsideration of the summary judgment award.

Moreover, the court found "plaintiff [did] not identify any grounds that would qualify for the [c]ourt to reconsider, nothing palpably incorrect. Nor any

29

evidence that the [c]ourt failed to consider. It's a re-argument of the claims from the original summary judgment." Plaintiff does not provide the certification he submitted to the court in support of the motion in his appendix on appeal. As a result, we are unable to review the certification either to confirm the court's assessment of plaintiff's argument in support of the motion, or to render an independent determination on whether plaintiff was merely "dissatisfied with [the court]'s decision" and re-arguing his initial opposition to summary judgment, Guido, 202 N.J. at 87 (citation omitted), or if he offered evidence purporting to establish the court "expressed its decision based upon a palpably incorrect or irrational basis, or . . . that the court . . . did not consider, or failed to appreciate the significance of probative, competent evidence," Kornbleuth, 241 N.J. at 301 (quoting Guido, 202 N.J. at 87-88); see also R. 2:6-1(a)(1)(I) (requiring an appellant to provide "such . . . parts of the record . . . as are essential to the proper consideration of the issues" in his or her appendix on appeal); Soc'y Hill Condo. Ass'n v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002) (finding because an appellant's failure to adhere to the requirements of Rule 2:6-1(a)(1)(I) "rendered review on the merits impossible, we ha[d] no alternative but to affirm"). Plaintiff's failure to provide on appeal the certification submitted in support of his motion for reconsideration leaves us

with no foundation upon which to find the court's denial of the motion was in error. We therefore affirm the court's order. See R. 2:6-1(a)(1)(I); Soc'y Hill Condo. Ass'n, 347 N.J. Super. at 177-78. We add only the following comments.

Plaintiff's arguments on appeal do not reveal a "palpably incorrect . . . basis" upon which the court granted the Commission summary judgment, nor do they establish the court "failed to appreciate the significance of [any] probative, competent evidence." Kornbleuth, 241 N.J. at 301 (quoting Guido, 202 N.J. at 87-88). Plaintiff argues the court ignored that the Commission "did not deny [p]laintiff's application, did not approve that application, [and] did not grant a hearing before an [ALJ,] which is a predicate to denial." Thus, he claims the court "did not deal with [the Commission's] failure to function in this case." Plaintiff's argument is incorrect and, in part, self-defeating.

First, the court expressly considered that the Commission did not approve or deny plaintiff's application or provide plaintiff with a hearing, and determined these facts did not raise a genuine issue of material fact because (1) the Commission actively investigated plaintiff's application, (2) plaintiff did not provide evidence the investigation was unreasonable, see G.R., 435 N.J. Super. at 402-03, and (3) the Commission was unable to take further action on

31

plaintiff's application following Apexel's withdrawal of his sponsorship, see N.J.S.A. 32:23-114. Second, although plaintiff argues the Commission breached a duty by not affording him "a hearing[,] . . . which is a predicate to denial," plaintiff admits the Commission did not issue a denial. Thus, the Commission could not have breached a duty to plaintiff by virtue of its failure to grant him a hearing that is a "predicate to denial" where the undisputed evidence established the Commission did not issue a denial.

Plaintiff inaccurately claims "[t]he [c]ourt never dealt with why the sponsorship was withdrawn." However, the court expressly addressed Apexel's withdrawal of plaintiff's sponsorship, and found the undisputed facts established Apexel did not withdraw the sponsorship due to any influence exerted by the Commission. Because the court found the Commission did not coerce or instruct Apexel to withdraw plaintiff's sponsorship, Apexel's reasoning was of no moment to the court's decision. Once Apexel withdrew the sponsorship, the Commission lacked authority to take further action on plaintiff's application. See ibid. Plaintiff's mere dissatisfaction with the court's analysis of the evidence in its summary judgment determination is not a proper basis for reconsideration. See Guido, 202 N.J. at 87. Further, and as noted, the court analyzed the evidence before it on the summary judgment motion, and correctly determined the

evidence did not raise any genuine issues of material fact and the Commission was entitled to judgment as a matter of law.

Because "[w]e will not disturb the trial court's reconsideration decision 'unless it represents a clear abuse of discretion,'" Kornbleuth, 241 N.J. at 301 (quoting Hous. Auth. of Morristown, 135 N.J. at 283), and the court's decision here was accompanied by "a rational explanation," in accord with case law and "established policies," and rested on the precise basis a reconsideration motion should be decided on—whether the movant indicated a palpable error in the court's issuance of the underlying order or that the court failed to appreciate probative evidence—there exists no basis for us to disturb the court's denial of reconsideration, id. at 302 (quoting Pitney Bowes Bank, 440 N.J. Super. at 382); see also Guido, 202 N.J. at 87-88.

Any arguments made on plaintiff's behalf that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5589-18